## JOHN W. BRYAN *vs.* JAMES BATES.

If a person charged with crime and found guilty in the superior court alleges exceptions to the rulings of the presiding judge, and the judge refuses to stay judgment, under *St.* 1864, c. 250, § 5, until the final decision of this court upon the exceptions, but proceeds to give judgment and sentence against him, that judgment is a final judgment by the highest court of the state in which a decision can be had, within the meaning of § 25 of the Judiciary Act of 1789, authorizing a reëxamination of it by the supreme court of the United States upon a writ of error, under certain circumstances.

A writ of error, duly allowed by a justice of the supreme court of the United States, in a criminal case in which final judgment and sentence have been given by a court of this commonwealth, and served by lodging a copy thereof in the clerk's office within ten days after the judgment, will by the provisions of the Judiciary Act of 1789 operate as a *supersedeas* and stay of execution; but, before discharging the prisoner on *habeas corpus* in such a case, this court will require him to give sufficient bail to abide the final judgment which may be ordered by the supreme court of the United States, or by the courts of this state after the writ of error shall have been disposed of by that court.

PETITION presented to the chief justice on the 13th of March 1866, and by him adjourned into the full court, for a writ of *habeas corpus* to the sheriff of Plymouth, in behalf of one imprisoned in the house of correction in that county under a warrant of commitment from the superior court, whose record, a copy of which was annexed to the petition, showed the following proceedings :

At February term 1866 of the superior court in Plymouth, Bryan was indicted for being a common seller, and for making single unlawful sales of intoxicating liquors ; and pleaded in bar of the indictment, that he was a retail dealer in intoxicating liquors, and had a license granted by the United States under an act of congress to do all the acts complained of, for which he had paid into the treasury of the United States the sum of twenty-five dollars ; and that he had also paid to the United States in money a revenue duty or tax upon the same liquors and in the same package, form and quantity, which he was now indicted for selling ; and that he had not otherwise sold intoxicating liquors. The district attorney of the Commonwealth filed a replication denying all the allegations of the plea ; and Bryan demurred to the replication. *Brigham,* J. overruled the demurrer, and ordered Bryan to plead over, which he refused to do.

and the court ordered a plea of not guilty to be entered, and upon this issue submitted the case to a jury, who returned a verdict of guilty.

The presiding judge, before sentence, allowed a bill of exceptions, which stated that the Commonwealth introduced evidence tending to show that the defendant made several sales of intoxicating liquors by retail during the time named in the indictment; that the defendant put in evidence a license from the United States in common form, authorizing him to exercise the business of a retail dealer in intoxicating liquors during that time, and asked the court to rule and instruct the jury that such license authorized the defendant to make the sales charged in the indictment; but the court declined so to do, and did rule and instruct the jury that such license afforded him no protection; and the defendant alleged exceptions to this ruling, instruction and refusal, and appealed from the decision overruling his demurrer.

The judge refused a certificate to stay judgment and sentence under the *St.* of 1864, *c.* 250, § 5, (which is copied in the margin,*) and on the 20th of February 1866, " having considered the offence whereof the said John W. Bryan is convict," ordered that he pay a fine of fifty dollars and costs of prosecution, and stand committed until such fine and costs are paid, and be imprisoned at hard labor for six months in the house of correction, and recognize in the sum of one thousand dollars not within one year from the time of his conviction to violate any provision of

---

* " No bill of exceptions or appeal from the rulings or decision of the superior court before whom the cause is tried, shall stay judgment on an indictment, complaint or other criminal proceeding, unless the presiding justice or some justice of the supreme judicial court shall certify thereon, that in his opinion there is so much doubt as to the questions raised thereby, as to render it expedient to stay judgment until the final decision of the supreme judicial court; which certificate so made, and filed with the clerk of the proper court, shall operate to stay judgment and sentence, and if the defendant has been committed, and the offence is bailable, to authorize the clerk to issue a precept for his release, upon such terms as to bail as the justice granting the certificate shall order.''

By *St.* 1866, *c.* 228, passed after the decision in *Bryan's case*, that section is repealed.

Bryan *v.* Bates.

the Gen. Sts. *c.* 86, or any law of this commonwealth relating to the sale of spirituous and intoxicating liquors, and stand committed until he should enter into such recognizance.

Within ten days after this judgment and sentence, Bryan obtained the allowance by a justice of the supreme court of the United States of a writ of error under the Judiciary Act of 1789 to take the case to that court, and gave bond " to prosecute his said writ to effect, and answer all damages and costs if he fail to make his plea good," and lodged a copy of the writ in the clerk's office of the superior court.

The attorney general admitted that the writ of error was duly served upon him, and that the prisoner within said ten days gave notice thereof to the sheriff and demanded his discharge from imprisonment pending the writ of error.

*G. Sennott,* for the prisoner.

*Reed,* A. G., for the respondent. The questions arising upon the agreed facts are, whether a writ of error of itself operates in a criminal case as a *supersedeas* and stay of the execution of sentence, and whether such a writ, with a bond in the form stated, has such operation.

1. A writ of error has no such effect at common law. *Rex* v. *Wilkes,* 4 Burr. 2537. *Meriton* v. *Stevens,* Willes, 271. *Beatty* v. *Chapline,* 2 Har. & Johns. 7. *Conner* v. *Commonwealth,* 2 Virginia Cas. 30. *Ferris* v. *Douglass,* 20 Wend 628. *Ribout* v. *Wheeler,* Sayer, 166. *Donelly* v. *State,* 2 Dutcher, 463, 601. *State* v. *Craft,* Walker, (Miss.) 537. *State* v. *Clark,* 15 Ohio, 595. *People* v. *Lohman,* 2 Barb. 450. *Ex parte Lees,* El., Bl. & El. 828.

2. Neither does a writ of error with a bond as in this case have such effect, under and by virtue of any statute of the United States. *Worcester* v. *Georgia,* 6 Pet. 515. U. S. Sts. 1789, *c.* 20, §§ 22–25 ; 1839, *c.* 31, § 5. The statute provides that the writ of error shall have the same effect as if the judgment had been rendered in a circuit court. But if this judgment had been rendered in the circuit court, no writ of error would lie. And the language of the bond is adapted to civil cases only. The condition is simply to pay damages and costs. Supposing an officer

in executing a search warrant for liquors had been resisted untc death, and the prisoner were indicted for murder, and shoulo take the case to the supreme court of the United States upon a bond to pay damages and costs.

3. A person bringing a writ of error after conviction and sentence is not without remedy. *Longworth, pet'r*, 7 Louis. Ann. R. 247. *Rex* v. *Wilkes*, before cited. *Rex* v. *Bishop*, 1 Stra. 9. *Rex* v. *Reader*, Ib. 531. *Ex parte Tayloe*, 5 Cowen, 39. *People* v. *Van Horne*, 8 Barb. 158.

Gray, J. The petitioner contends that he is entitled to be discharged from his imprisonment, upon the ground that the writ of error to take his case to the supreme court of the United States, having been served on the attorney general, and a copy of it lodged in the clerk's office in which the record remains, within ten days after the judgment and sentence against him, was by virtue of the provisions of the United States Judiciary Act of 1789, *c.* 20, §§ 22, 23, 25, a *supersedeas* and stay of the execution of his sentence. The consideration of this position involves two questions: First, Whether there has been such a final judgment in the courts of the state as to sustain the writ of error. Second, Whether, if there has been such a judgment, the writ of error operates as a *supersedeas* and stay of execution in a criminal case. It is not denied in this case, and indeed could not be since the rulings of the supreme court of the United States upon the motions made in the case of *Mc Guire* v. *Commonwealth*, 3 Wallace, 382, that the decision stated in the bill of exceptions, at least, was such as, if a final judgment by the highest court of this state in which a decision in the case could be had, could be revised by the supreme court of the United States upon writ of error.

It is argued for the petitioner that the supreme court in *Mc Guire's case* has overruled the previous decision of this court in *Fleming's case, ante,* 191, and has decided that any case may be taken by writ of error to the supreme court of the United States from the superior court of this commonwealth, without any question in it having been first brought, or attempted to be brought, to this court by exceptions or otherwise. But we dc

not find that any such point was taken, argued, or involved in the decision of the supreme court upon the motions made before it in *McGuire's case.* In that case, exceptions had been in fact brought to this court, and overruled, as appeared by the record taken to the supreme court of the United States, and was stated in its opinion. 3 Wallace, 383, 386.* The points of law decided by that court were two : First, That the writ of error was properly addressed to the superior court, in which the record remained, as had long before been decided in *Gelston* v. *Hoyt,* 3 Wheat. 246. Second, That the grounds and reasons of the decision of this court, as stated in its rescript to the superior court, formed no part of the record, (which exactly accords with the judgment delivered by Chief Justice Marshall in *Williams* v. *Norris,* 12 Wheat. 120–122, and since constantly followed,) and therefore need not be set forth therein. We have stated in the opinion in *Fleming's case* the reasons for believing that congress did not intend by the Judiciary Act of 1789 to allow a case to be taken from a state court to the supreme court of the United States until proper efforts had been made to obtain the decision of the court of last resort in the state. The practice under the existing statutes in this commonwealth is somewhat peculiar. The record of the case remains throughout in the court in which the trial is had ; but any question of law (except such as arise upon dilatory pleas or motions) may be brought to this court by exceptions or appeal, and when so brought, the litigation of the suit does not terminate until the exceptions or appeal are disposed of by this court, and the judgment of this court upon the questions so brought to it is remitted to the court below for the purpose of being carried into effect. Gen. Sts. *c.* 112, §§ 11, 14, 15, 35 ; *c.* 114, §§ 10–12 ; *c.* 115, §§ 7, 12. If the supreme court of the United States, in a case requiring a decision upon the point, should adjudge that, under the existing statutes and practice in this

---

* The judgment of the supreme court of the United States upon the merits in *McGuire* v. *Commonwealth,* reported in 3 Wallace, 387, was not rendered until after the decision of this court upon *habeas corpus* in *Bryan's case.*

commonwealth, the superior court, in which the record of the case always remains, and in which the final judgment is ultimately entered, is the only court whose judgments and decisions are to be taken into consideration in determining under what circumstances a writ of error will lie, and that it is immaterial whether or not any attempt has been made to bring any question in the case to this court, it will be our duty to conform to such adjudication in all cases, unless the legislature of the Commonwealth shall make other provisions for bringing cases to this court in such a manner as to make it the court in which a final decision could be had, within the meaning of the Judiciary Act of 1789.* But, in the absence of any adjudication of the supreme court of the United States to the contrary, this court adheres to the opinion expressed in *Fleming's case*, and holds that a ruling or decision of the superior court, upon which no execution has issued or been awarded, and which is liable to be reversed by this court upon exceptions or appeal, and while no attempt has been made to obtain the decision of this court, is not a final judgment upon which a writ of error lies to take the case to the supreme court of the United States. If therefore such were the facts here, and there were nothing to distinguish this case from *Fleming's*, we should be obliged to remand the prisoner.

But it appears in this case that the presiding judge in the superior court, not being able to certify that in his opinion there was so much doubt as to the question raised, as to render it expedient to stay judgment until the final decision of this court

---

* By the *St.* of 1866, *c.* 220, "the supreme judicial court, upon deciding any question brought before said court at a law term thereof, by exceptions, appeal or otherwise, in any case, civil or criminal, may send a rescript, as now provided by law, to the court in which the record remains, or may by writ of *certiorari* or other proper process, remove or order to be removed the record of the case into the supreme judicial court, and there enter judgment, and may afterwards remit the record to the court from which it has been removed, to carry such judgment into effect, or may instead thereof order a new trial or further proceedings to be had at the bar of the supreme judicial court, or sentence to be awarded or execution issued in said court."

upon the exceptions, refused to give a certificate to that effect, and proceeded to give judgment and sentence against the defendant, as he was required to do by the *St.* of 1864, *c.* 250, § 5; and in execution of that judgment and sentence the defendant has been committed to the house of correction.  We can have no doubt that a judgment under which the convict is by law imprisoned and punished, before a hearing can be had in this court upon his exceptions, so far disposes of his case that it must be considered a final judgment of the highest court in which a decision can be had, within the meaning of the twenty-fifth section of the Judiciary Act, and that under these circumstances a writ of error will lie at once to take the case to the supreme court of the United States.

The important question then remains, which was left undecided in *Fleming's case,* whether this writ of error operates as a *supersedeas* or stay of the execution of the sentence.  At common law, a writ of error, though duly allowed and served, did not operate as a *supersedeas* in a criminal case in which the party was imprisoned under a sentence, or in a civil case so far as to supersede a levy of execution which had been begun before the allowance of the writ of error.  *Rex* v. *Wilkes,* 4 Burr. 2537, & *seq.*  *Kendall* v. *Wilkinson,* 4 El. & Bl. 688.  Bac. Ab. Error, H.; Supersedeas, G.  *Boyle* v. *Zacharie,* 6 Pet. 659.  Rev. Sts. *c.* 112, §§ 10–17, and commissioners' notes.  The question now to be decided therefore depends upon the construction to be given to the following provisions of the Judiciary Act of 1789:

" Final judgments and decrees in civil actions and suits in equity " in a circuit court of the United States, " where the matter in dispute exceeds the sum or value of two thousand dollars, exclusive of costs," may be re-examined and reversed or affirmed in the supreme court, the citation being signed by a judge of either court, who is required to " take good and sufficient security that the plaintiff in error shall prosecute his writ to effect, and answer all damages and costs if he fail to make his plea good." § 22.

" A writ of error as aforesaid shall be a *supersedeas* and stay execution in cases only where the writ of error is served by a

copy thereof being lodged for the adverse party in the clerk's office where the record remains, within ten days, Sundays ex clusive, after rendering the judgment or passing the decree complained of. Until the expiration of which term of ten days, executions shall not issue in any case where a writ of error may be a *supersedeas.*"  § 23.

" A final judgment or decree in any suit, in the highest court of law or equity of a state in which a decision in the suit could be had," where the decision is of a certain kind, which is admitted to include this case, " may be re-examined and reversed or affirmed in the supreme court of the United States upon a writ of error, the citation being signed by the chief justice or judge or chancellor of the court rendering or passing the judgment or decree complained of, or by a justice of the supreme court of the United States, in the same manner and under the same regulations, and the writ shall have the same effect, as if the judgment or decree complained of had been rendered or passed in a circuit court."  § 25.

The argument of the attorney general, that congress, in framing and passing the Judiciary Act of 1789, did not contemplate that a writ of error should operate as a *supersedeas* of the execution of a sentence in a criminal case, is very strong, and we have been much impressed by its force. The only security required by the terms of the act, or which has in fact been taken upon the allowance of the writ of error in this case, or, so far as we know, in any other case, is " that the plaintiff in error shall prosecute his writ to effect, and answer all damages and costs if he fail to make his plea good," which is a most inappropriate and inadequate security in a criminal case. The judgment of a state court is by the twenty-fifth section of the Judiciary Act to be re-examined in the supreme court of the United States upon a writ of error, " in the same manner and under the same regulations, and the writ shall have the same effect, as if the judgment or decree complained of had been rendered or passed in a circuit court" of the United States; and by the clear words of the twenty-second section, and the express decisions of the supreme court of the United States, no writ of

error lies to a circuit court of the United States in any criminal case. *United States* v. *More*, 3 Cranch, 173. *Ex parte Gordon*, 1 Black, 503.

But this argument tends quite as strongly to prove that the supreme court of the United States has no appellate jurisdiction whatever from the state courts in any criminal case. And after the most careful and anxious consideration we are satisfied that the question of the effect in a criminal case of a writ of error upon a final judgment in the courts of the state has been, though not directly and in terms, yet in substance and by neces-sary inference, settled by the deliberate judgments of the su-preme court of the United States in favor of its appellate juris-diction in such cases.

That jurisdiction was first brought into judgment in the case of *Cohens* v. *Virginia*, 6 Wheat. 264, and after extended argu-ments upon the question, asserted and maintained by Chief Justice Marshall, in one of his ablest and most elaborate opin-ions, in which all his associates concurred. The principal reasons given by the supreme court for the conclusion that the language of the twenty-fifth section of the Judiciary Act ex-tended to criminal cases were, that the general government, though limited as to its objects, was supreme with respect to those objects; that the judiciary power of the United States was coextensive with the legislative, and capable of deciding any question growing out of their constitution and laws; that in case a difference of opinion should arise between the state courts and the federal courts, it was important to have a uni-form interpretation of the constitution and laws of the United States throughout the country, in all cases, criminal as well as civil, in which a right under them should be asserted in a court of justice; and that the appellate jurisdiction was no less neces-sary to protect those acting under the authority of the United States from sentence and punishment, than from civil judgment and execution, in the courts of the state.

In the subsequent case of *Worcester* v. *Georgia*, 6 Pet. 515, in which the supreme court held that a statute of the state of Georgia, under which the plaintiff in error had been convicted

VOL. XII. **14**

and sentenced, was repugnant to the constitution, laws and treaties of the United States, Chief Justice Marshall said, " The plaintiff in error is not less interested in the operation of this unconstitutional law than if it affected his property. He is not less entitled to the protection of the constitution, laws and treaties of his country." 6 Pet. 562. Mr. Justice McLean added, " It is more important that jurisdiction should be given to this court in criminal than in civil cases, under the twenty-fifth section of the Judiciary Act. Would it not be inconsistent, both with the spirit and letter of this law, to revise the judgment of a state court, in a matter of controversy respecting damages, where the decision is against a right asserted under the constitution or a law of the United States; but to deny the jurisdiction in a case where the property, the character, the liberty and life of a citizen may be destroyed, though protected by the solemn guarantees of the constitution ? " Ib. 567. And the whole court considered this question as settled by the decision in *Cohens* v. *Virginia.*

No question was raised in either of those cases of the effect of the writ of error as a *supersedeas,* nor in *Worcester's case* could have been, inasmuch as a copy of the writ was not lodged in the clerk's office until more than ten days after the judgment complained of and the allowance of the writ of error. But the bond filed with the writ in that case is stated to have been in the usual form; and in discussing the question of the form of the return upon the writ of error, the chief justice said, " It has been truly said at the bar that in regard to this process the law makes no distinction between a criminal and civil case." 6 Pet. 534, 537. A writ of error to remove the case beyond the jurisdiction of the state courts into the supreme court of the United States might be of little value, if the law provided no means to prevent the imprisonment, or in a capital case the execution, of the prisoner by the authorities of the state before his case could be reached and decided by the supreme court of the United States. The twenty-fifth section of the Judiciary Act contemplates the possibility that the state court may disobey the mandate of the supreme court of the United States, an .

provides that " the supreme court, instead of remanding the cause for a final decision as before provided, may at their discretion, if the cause shall have been once remanded before, proceed to a final decision of the same, and award execution." It cannot be supposed that, while the supreme court is thus vested with the ultimate power to enforce its own judgments, the protection of a person convicted in a state court from being meanwhile executed, or obliged to serve out his sentence of imprisonment, is to depend upon the discretion or comity of the courts or authorities of the state. And the language of the twenty-fifth section cannot be construed to give the same appellate jurisdiction in criminal cases as in civil, without giving the same effect to a writ of error in the one as in the other, for it declares, as it were in one breath, that the final judgment or decree of the state court upon any one of the classes of questions particularly enumerated " may be re-examined and reversed or affirmed in the supreme court of the United States upon a writ of error," " in the same manner and under the same regulations, and the writ shall have the same effect, as if the judgment or decree complained of had been rendered or passed in a circuit court." The fact that no writ of error lies to a circuit court of the United States in a criminal case no more shows that a writ of error to a state court cannot have the effect of a *supersedeas* in a criminal case, than it shows that a writ of error in a criminal case does not lie to a state court at all, which is inconsistent with the decisions, already cited, of the supreme court of the United States. The result seems to us to be inevitable that in every case, criminal or civil, in which the writ of error may be issued to a state court, it shall have the same effect as if issued to a circuit court of the United States in a civil case.

We are therefore obliged to hold that the writ of error sued out in this case, and duly served within ten days after the judgment by lodging a copy in the clerk's office in which the record remains, superseded and stayed the execution of the sentence, and that the petitioner is entitled to a writ of *habeas corpus* and to a discharge from his imprisonment in the house of correction under the sentence so superseded.

We are the more ready so to order, because the decisions of the supreme court of the United States leave us in doubt whether, if we should refuse this writ of *habeas corpus*, the petitioner could in any way obtain from that court a suspension of his punishment pending the writ of error which the constitution and laws of the country give him the right to prosecute to final judgment in the supreme court of the United States. In civil cases indeed, in which writs of error have been duly sued out and served within the ten days, that court has issued writs of *supersedeas* to the state courts. *Stockton* v. *Bishop*, 2 How. 74. *Hogan* v. *Ross*, 11 How. 296, 297. But in *Holmes* v. *Jennison*, 14 Pet. 540, the supreme court was divided in opinion upon the question whether a writ of error would lie in any case to revise the decision of a state court refusing to discharge a prisoner on *habeas corpus*. And in the *Case of Dorr*, whom the supreme court of the State of Rhode Island had sentenced to imprisonment for life, and refused a suspension of the sentence until a writ of error could be sued out to bring his case to the supreme court of the United States upon the ground that the law of the state on which he was indicted and convicted was repugnant to the constitution of the United States, or to allow his counsel access to him in his imprisonment to ascertain whether he desired such a writ of error, the supreme court of the United States refused a writ of *habeas corpus* to enable him to sue out a writ of error ; and Mr. Justice McLean, in delivering its opinion, said, " Neither this nor any other court of the United States, or judge thereof, can issue a *habeas corpus* to bring up a prisoner, who is in custody under a sentence or execution of a state court, for any other purpose than to be used as a witness." 3 How. 105.

It does not however follow that the prisoner is entitled to his unconditional discharge. We cannot indeed inquire into the sufficiency of the bond taken upon the allowance of the writ of error, so far as to refuse obedience to that writ. The bond is in the terms of the twenty-second section of the Judiciary Act, the decision of the judge who allowed it is conclusive evidence upon us of its sufficiency, and whether any other form of

bond may or should be required can be determined only by the supreme court of the United States. *Martin* v. *Hunter*, 1 Wheat. 361. *Catlett* v. *Brodie*, 9 Wheat. 553.

But the writ of error is not a new suit: it is essentially an appeal upon the point ruled against the right claimed under the constitution and laws of the United States, which continues the original litigation, for the purpose of submitting the decision of the state court upon that point to re-examination by the tribunal of last appeal, the supreme court of the United States. *Cohens* v. *Virginia*, 6 Wheat. 410. *Nations* v. *Johnson*, 24 How. 204, 205. By the writ of error, sued out and served in accordance with the law of the United States, the judgment of the state court is no longer the final judgment in the case, and the execution of the sentence is suspended until the case shall have been finally decided.

The provision of the twenty-third section of the Judiciary Act, that until the expiration of ten days after judgment execution shall not issue in any case where a writ of error may be a *supersedeas*, does not seem to us to be applicable to the state courts, inasmuch as it does not concern the manner in which or the regulations under which the judgment is to be re-examined in the supreme court of the United States, or the effect of the writ of error when sued out. The judgment and sentence in this case were in one order, according to the usual practice, and warranted by the law of the Commonwealth. If the convict had sued out his writ of error at once, or had obtained from the superior court a suspension of the execution of the sentence for a day or two to enable him to sue it out, he might have avoided any imprisonment at all until final judgment after the decision of the supreme court of the United States upon the writ of error. His imprisonment under the sentence for less than ten days neither prevents his availing himself of the *supersedeas* allowed by the law of the United States, nor will protect him from being sentenced anew after such final judgment, if adverse to him.

While it is our duty, in obedience to the constitution and laws of the United States, to allow the record of the case to be taken by the writ of error to the supreme court of the United

States, and to release the prisoner from punishment in the mean while, it is also our duty to see that the criminal law of the Commonwealth shall be carried into execution so far as is consistent with the constitution and laws of the United States. And it is within the inherent powers of this court so to frame its order upon the writ of *habeas corpus* as to require proper security that the petitioner shall abide the final judgment in the case. Gen. Sts. *c.* 144, §§ 25, 31; *c.* 170, §§ 36, 39.

The sentence passed by the superior court having been superseded, and the case not yet ended, the prisoner is to be held in custody by the sheriff in the common jail as before that sentence, to await the final judgment which may be ordered by the supreme court of the United States, or by the courts of this commonwealth after the writ of error shall have been disposed of by that court, unless he gives bail with sufficient sureties, to the satisfaction of a justice of this court, to abide such final judgment.*                     *Writ of habeas corpus granted.*

------

## COMMONWEALTH *vs.* LAWRENCE CASEY.

An indictment under the Gen. Sts. *c.* 87, for maintaining a tenement used for the illegal sale and illegal keeping of intoxicating liquors, by one holding a license to sell such liquors under the internal revenue law of the United States, is not a "suit or prosecution against any officer of the United States or other person for or on account of any act done under the revenue laws of the United States, or under color thereof, or for or on account of any right, authority or title, set up or claimed by such officer or other person under any such law of the United States," which can be removed into the circuit court of the United States for trial, under the U. S. St. of 1833, *c.* 57, § 3.

INDICTMENT under the Gen. Sts. *c.* 87, §§ 6, 7, for keeping and maintaining a tenement used for the illegal sale and illegal keeping of intoxicating liquors.

---

* By the U. S. St. of 1866, *c.* 184, § 69, "whenever a writ of error shall be issued for the revision of any judgment or decree in any criminal proceeding where is drawn in question the construction of any statute of the United States, in a court of any state, as is provided in the twenty-fifth section of" the Ju diciary Act of 1789, *c.* 20, "the defendant, if charged with an offence bailable

Upon the presentment of the indictment in the superior court in Essex, a capias was issued, and the defendant was brought in, and pleaded not guilty.  He afterwards filed with the clerk of that court. a duplicate of a writ of *habeas corpus cum causa,* issued by the circuit court of the United States for the district of Massachusetts, addressed to the United States marshal for the district, or either of his deputies, under the act of congress of 1833, *c.* 57, § 3, which writ recited that he had presented his petition to that court, verified by affidavit and an attorney's certificate, as required by that act, and setting forth that a certain prosecution (describing it as this indictment) had been commenced against him in said superior court for and on account of acts done by him under the revenue laws of the United States and by color thereof, and for and on account of acts done by him under authority of those laws, and had not been tried, and had been commenced against him by capias served upon him within the district, and representing that he was duly authorized and licensed by those laws to keep, sell and retail the liquors named in this indictment in manner and form as he was charged in this indictment with having done.   The defendant thereupon moved the superior court to stay proceedings in the case and to dismiss him from custody.  But *Lord,* J., overruled the motion, and the defendant alleged exceptions.   He was afterwards tried in the superior court, still protesting against the jurisdiction, and found guilty, and his exceptions were allowed and signed by the presiding judge.

*G. Sennott,* for the defendant.

*Reed,* A. G., for the Commonwealth.

by the laws of such state, shall not be released from custody until a final judgment upon such writ, or until a bond, with sufficient sureties, in a reasonable sum, as ordered and approved by the state court, shall be given ; and if the offence is not so bailable, until a final judgment upon the writ of error." 14 U. S. Sts. at Large, 172, 173.