JAMES NATIONS AND JOSEPH NATIONS, PLAINTIFFS IN ERROR, *v.* NANCY ANN JOHNSON AND JAMES JOHNSON.

In a suit in the District Court of the United States for the western district of Texas, a transcript of a record of the high court of errors and appeals and the chancery court for the northern district of the State of Mississippi was properly allowed to be offered as conclusive proof of the value of certain slaves, and of the amount of their annual hire until given up.

The laws of Mississippi provide, that where a case is carried up to an appellate court, and the defendant in error is a non-resident, and has no attorney of record within the State, notice shall be given by publication in a newspaper of the pendency of said cause, which the appellate court shall then proceed to hear and determine.

These directions having been complied with, the jurisdiction of the appellate court was complete; and the plea, in Texas, of *nul tiel* record, properly overruled.

The American and English cases upon this point examined.

The decree of the court was also properly allowed to go to the jury as evidence of the value of the hire of the slaves after its rendition; evidence having also been offered at the trial of the value of such hire at that time.

The case having been on the chancery side of the court and transferred thence to the law docket, a bill of exceptions does not bring into this court for revision any errors alleged to have been committed when it was on the chancery side.

THIS case was brought up by writ of error from the District Court of the United States for the western district of Texas.

All the facts in the case, and also the proceedings of the court below, are set forth in the opinion of this court.

It was argued by *Mr. Paschal* for the plaintiffs in error, no counsel appearing for the defendants.

*Mr. Paschal* commenced his argument by stating it as a general principle, that a judgment obtained by publication and without personal service cannot be the foundation of an action in another State, nor, indeed, in the State where the suit is brought; that all suits are either *in personam* or *in rem;* that when *in personam*, there must be personal service to give jurisdiction; when *in rem*, the remedy is exhausted when the *res* is disposed of. Amongst other authorities, he cited 3 Howard, 336, and 11 Howard, 437. He then considered the effect of the statute of Mississippi, which he said did not change the principle. When the suit was dismissed, it was a final judgment, a discharge of the defendants, who had no longer a day in court. A writ of error is an original writ.

2 Tidd's Practice, 1134.

Coke Littleton, 298 *b*.

2 Wm. Sand, 5 Ed., 100.

And a writ of error, like a *scire facias*, is considered a new action, and, therefore, upon bringing it, the defendant in the original action may change his attorney, without obtaining a judge's order therefor.

2 Tidd's Practice, 1141.

Batchellor *v*. Ellis, 7 Dunford and East., 337.

*Mr. Paschal* then proceeded to examine the authorities as to the nature of a writ of error.

11 Howard, 165, 437.

Mr. Justice CLIFFORD delivered the opinion of the court.

This case comes before the court upon a writ of error to the District Court of the United States for the western district of

Texas.  It was a petitory suit, commenced by the present defendants, and was founded upon a certain final decree rendered at the April term, 1854, by the district chancery court, held at Carrollton, in the State of Mississippi, for the northern district of that State.  Among other things, the petitioners allege that Nancy A. Johnson, then Nancy A. Alvis, and a minor, by her next friend, brought a suit by bill of complaint in that court against the present plaintiffs to recover three slaves belonging to her, together with hire for the same for a specified time; that she subsequently intermarried with James Johnson, who was admitted with her to prosecute the suit; that the cause was afterwards submitted to the court for a final hearing, and a decree entered dismissing the bill of complaint at the cost of the petitioners.  They also allege that they prosecuted a writ of error to the high court of errors and appeals in that State, and that the decree of the district court of chancery was there reversed, and a decree entered in their favor.  That decree, as set forth in the petition, shows that the appellate court was of the opinion that the slaves in controversy were the property and separate estate of the first-named complainant. Wherefore it was considered by the court that the decree of the vice chancellor ought to be reversed, and it was so ordered, adjudged, and decreed; and the court proceeding to pronounce such a decree as the subordinate court should have rendered, entered a decree that the complainants do have and recover of the respondents the slaves then in controversy, for the sole and separate use and right of the first-named complainant, and requiring the respondents to restore the slaves and deliver the possession of the same to the said complainant, or her authorized agent.  It is also recited in the decree that the court was of the opinion that the complainant was entitled to recover hire for the slaves from the time they were taken from her possession by the respondents.  To carry out the directions of the court, it was further ordered, adjudged, and decreed, that the cause be remanded to the subordinate court, and that an account be taken of the hire of the slaves, and for such other and further proceedings as may be required in the premises After the mandate went down, the cause was sent to a com-

missioner to carry into effect the directions of the appellate court. He made a report, showing that on the fourth day of February, 1854, the reasonable hire for the slaves amounted to the sum of twenty-two hundred dollars; and he also reported that the hire of the slaves was reasonably worth two hundred dollars per annum. That report was confirmed by the court, and on the fourteenth day of April of the same year a decree was entered in favor of the complainants, that they do have and recover of the respondents the said sum of twenty-two hundred dollars with interest; and also, that they do have and recover of the respondents at the rate of two hundred dollars per year for the hire of the slaves, from the date of the report until they shall be surrendered up according to the decree in the cause. As a part of the decree, it was also ordered and directed that execution issue, as at law, for the amount awarded to the complainants, together with the costs of suit. Plaintiffs also allege in their petition or declaration, that those decrees or judgments were in full force, and that they have never in any manner been annulled, reversed, satisfied, or discharged, either in whole or part. Process was duly served upon the defendants in this case, and on the fifth day of December, 1854, they appeared and made answer to the suit. From the minutes of the clerk it would seem that the suit was entered, in the first place, as a suit at law, and it was certainly so treated by the defendants in their first answer. Those proceedings, however, are of no importance in this investigation, because the record states, that on the fourth day of December, 1856, the cause was docketed on the chancery side of the court; and on the second day of June, 1857, the defendants again appeared and filed their answer to the petition, without objection to the transfer which had been made of the cause. To that answer the plaintiffs excepted on various grounds, and after a full hearing the exceptions were sustained, and the answer was stricken out by the order of the court. Both parties again appeared before the court, sitting in chancery, on the 11th day of June, 1857, when, as the record states, "upon motion, and merits examined by the court, it was ordered that the cause be transferred to the law docket." No objection was

*Nations et al.* v. *Johnson et al.*

made to that order by either party, and for aught that appears to the contrary, the transfer was made by consent. Leave was subsequently granted to the plaintiffs to amend their petition, and on the twenty-sixth day of January, 1858, they filed an amendment to the same, alleging that they were citizens of the State of Tennessee, and that the defendants were citizens of the State of Texas. They also alleged in their amended petition, that the slaves in controversy were of the value of three thousand two hundred dollars, and prayed judgment in their favor for the recovery of the slaves, and in default of the delivery of the possession of the same, they also prayed judgment for their value, and " for general relief."

Exceptions were filed by the defendants to the amended petition, but the exceptions were overruled by the court. At the same time the defendants filed an additional answer to the petition, denying all the allegations and charges therein contained, and also pleaded the statute of limitations in two forms, as set forth in the transcript. Afterwards, on the sixth day of February, 1858, the defendants had leave to plead *nul tiel record* to the respective decrees set forth in the plaintiffs' petition. On that issue the court found for the plaintiffs, and overruled the plea, and the parties went to trial upon the plea denying all the allegations and charges contained in the plaintiffs' petition, and upon the pleas setting up the statute of limitations. To support the issue on their part, the plaintiffs introduced duly certified copies of the two records and decrees set forth in their petition, and proved by competent witnesses the value of the slaves at the time of the trial. By that testimony it appeared that one of the slaves was of the value of eight hundred dollars, and that the other two were each of the value of nine hundred dollars. Defendants offered to prove that they removed from Mississippi on the twentieth day of January, 1850; that they became citizens of Texas, and were domiciliated there on the twenty-first day of February of that year, and that they had ever since resided there as citizens of that State. That testimony was excluded by the court upon the objection of the plaintiffs, and the defendants excepted to the ruling. They offered no other evidence, and under the

instructions of the court the jury returned their verdict for the plaintiffs. At the trial, the defendants requested the court to instruct the jury that—

1. The transcript from the record to the high court of errors and appeals, and the chancery court for the northern district of the State of Mississippi, is not evidence sufficient to entitle the plaintiffs to recover.

2. That that portion of the decree of the chancery court fixing the hire of the negroes at two hundred dollars a year, from and after the date of that decree, is no evidence of the value of the hire of said negroes; and unless the plaintiffs have introduced some evidence independent of that record, proving the value of the hire, the jury cannot allow hire from the date of the judgment rendered by the vice chancellor.

But the court refused so to instruct the jury, and did instruct them that the record was conclusive proof that the title of the slaves was in the plaintiffs, and of the value of their hire up to the fourth day of February, 1854, as shown by the record; and the jury were also instructed to return a verdict in favor of the plaintiffs for the additional hire, at the rate of two hundred dollars per annum, from the date of the decree. Instructions were also given to the jury as to the other matters of claim set forth in the petition; but inasmuch as they are not now made the subject of complaint, we shall pass the exceptions over without remark, except to say that they are evidently without merit.

On this state of the case three questions are presented for decision:

1. It is insisted by the plaintiffs in error that the court erred in charging the jury that the record offered in evidence was conclusive proof as to the title of the slaves in controversy, and of the value of their hire to the date of the decree. That theory is based upon certain facts which are apparent in the record of that suit, and the question is raised both by the instructions given to the jury and by the refusal of the court to charge as requested. It appears from the record of the suit, that the bill of complaint was filed in the district chancery court for the northern district of Mississippi on the twenty-

sixth day of November, 1846, and that the respondents en-
tered their appearance on the twenty-third day of November,
1847, and made answer to the suit.   Testimony was taken on
both sides, and the respondents continued to prosecute their
defence to the suit until the eleventh day of April, 1850, when,
upon final hearing, the bill of complaint was dismissed at the
cost of the complainants.   Respondents' attorney then with-
drew his appearance; but the record states that the complain-
ants, on the same day, prayed an appeal, which was granted,
upon their giving bond for costs in ninety days, "and by con-
sent it is agreed" that the appeal be taken directly to the high
court of errors and appeals.   Complainants, however, failed
to prosecute the appeal within the appointed time, and conse-
quently were obliged to prosecute the appeal by writ of error.
It is not now questioned that a writ of error, under the cir-
cumstances of the case, was the proper process, by the law of
that State, for the removal of the cause into the appellate
court; but it is insisted that the subsequent decrees are void,
because the respondents were not legally notified of the pen-
dency of the writ of error.   Personal service was not made on
either of the respondents, and they never appeared in the ap-
pellate court.   On the contrary, it appears that the attorney
of the complainants, on the eighteenth day of January, 1852,
filed an affidavit in the cause, that the defendants in error
were not residents of the State, and that they had no attorney
of record on whom process could be served.   Provision, how-
ever, is made by the law of that State for service by publica-
tion in cases of this description.   By the act of the twenty-
ninth of January, 1829, it is provided, that "whenever a cause
shall be removed to the Supreme Court by writ of error, and
the court is satisfied that the defendant in error is a non-resi-
dent, and has no attorney of record within this State, it shall
be the duty of said court to cause notice of the pendency of
said cause to be published for three weeks in some public
newspaper, the first of which shall be at least three months
before the sitting of the next term of the court in which the
case is pending, within this State; on proof of which publica-
tion, the court shall proceed to hear and determine said cause,

in the same manner as if process had been actually served upon the said defendant." Hutchison's Dig., p. 931.

That regulation, by a subsequent act passed on the second day of March, 1833, is made applicable to the high court of errors and appeals, and it was conceded at the argument that the publication was made under that provision. On the filing of the affidavit, showing that the defendants in that suit were non-residents of the State, it was ordered by the court, that unless they appeared on the third Monday of October, 1853, "the court will proceed to hear and determine the cause in the same manner as if process had been actually served; and it was further ordered that a copy of the order be published in a certain public newspaper published at the capital of the State, once a week for three weeks." Publication was accordingly made, as appears by the decree in the cause, and on the twenty-third day of January, 1854, the decree was entered reversing the decree of the subordinate court; and the question is, whether the notice was sufficient to give the appellate court jurisdiction of the case and the parties. That the subordinate court had full jurisdiction is admitted. Both of the respondents appeared in that suit, and litigated the merits for the period of three years. From the evidence in the case, it appears that they got possession of the slaves in Tennessee, in violation of the rights of the first-named complainant, and removed them to the State of Mississippi. Suit was brought against them in a subordinate court of the latter State, and after three years' litigation, and when they had succeeded in dismissing the bill of complaint, they removed to Texas, carrying the slaves with them, although they knew the complainants intended to seek a revision of the decree in the appellate court. All of the equities of the case are therefore with the present defendants. Where a court has jurisdiction it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, until reversed, as a general rule, is regarded as binding in every other court. Whenever the parties to a suit, and the subject-matter in controversy between them, are within the regular jurisdiction of a court of equity, the decree of that

*Nations et al.* v. *Johnson et al.*

court is to every intent as binding as would be the judgment of a court of law. Accordingly, it was held by this court, in Pennington *v.* Gibson, 16 How., 65, that in all cases where an action of debt can be maintained upon a judgment at law to recover a sum of money awarded by such judgment, the like action may be maintained upon a decree in equity, provided it is for a specific amount, and that the records of the two courts are of equal dignity and binding obligation. Had the decree, therefore, been rendered in the subordinate court before the appeal, the right of the plaintiffs below to recover in this suit would have been beyond question, unless there is some other error in the record. Courts of general jurisdiction are presumed to act by right, and not by wrong, unless it clearly appears that they have transcended their powers. Gregnon's Lessee *v.* Astor, 2 Howard, 319; Voorhees *v.* the Bank of U. S., 10 Pet., 449. Notice to the defendant, actual or constructive, however, is essential to the jurisdiction of all courts, and it was held by this court, in Webster *v.* Reid, 11 How., 460, that when a judgment is brought collaterally before the court as evidence, it may be shown to be void on its face by want of notice to the person against whom it is entered. Numerous cases, also, are cited by the counsel of the present plaintiffs, applicable to the judgments or decrees of a court exercising original jurisdiction, which assert the general rule that no man shall be condemned in his person or property without notice, and an opportunity to make his defence. And some of them go much further, and lay down the rule as applicable to the inception of the suit, that notice by publication is insufficient to support the judgment in any jurisdiction, except in the courts of the State where it was rendered. Boswell's Lessee *v.* Otis et al., 9 How., 350; Oakley *v.* Aspinwall, 4 Comst., 513. None of these cases, however, precisely touch the question under consideration. Personal service was made upon the defendants in this case by due process of law in the court of original jurisdiction, and the question here is, whether a party duly served with notice in a subordinate court, after he has appeared and answered to the suit, and secured an erroneous judgment in his favor, may voluntarily

absent himself from the jurisdiction of the appellate tribunal, so as to render it impossible to give him personal notice of an appeal, and still have a right to complain that notice was served by publication, pursuant to the law of the jurisdiction from which he has thus voluntarily withdrawn. We think not. To admit the proposition, would be to deprive the other party of all means of removing the cause to the appellate tribunal, and would enable a party, who knew he had wrongfully prevailed in the court below, to secure the fruits of an erroneous judgment, by defeating the jurisdiction of the appellate court. Actual notice ought to be given in all cases where it is practicable, even in appellate tribunals; but whenever personal service has been rendered impossible by the removal of the appellee or defendant in error from the jurisdiction, service by publication is sufficient to give the appellate tribunal jurisdiction of the subject and the person, provided it appears in the record that personal notice was given in the subordinate court, and that the party there appeared, and litigated the merits of the controversy. Contrary to the views of the counsel for the present plaintiffs, we think there is some distinction between the notice required to be given to an appellee or defendant in error and the service of process in the original suit. A writ of error is said to be an original writ, because, at common law, it was issued out of the court of chancery; but its operation is rather upon the record, than the person. Under the judiciary act, says Marshall, Ch. J., the effect of a writ of error is simply to bring the record into court, and submit the judgment of the inferior tribunal to re-examination. It does not in any manner act upon the parties; it acts only on the record, by removing the record into the supervising tribunal. Suits cannot, under the judiciary act, be commenced against the United States; and yet writs of error, accompanied by citations, have uniformly issued for the removal of judgments recovered in favor of the United States into this court for re-examination. Such cases are of daily occurrence, and the judgments are here reversed or affirmed, as they are with or without error; and it has never been supposed that the writ of error in such cases, though sometimes

involving large amounts, was a suit against the United States. Plainly, therefore, there is a distinction between a writ of error and the original suit. According to the practice in this court, it is rather a continuation of the original litigation than the commencement of a new action; and such, it is believed, is the general understanding of the legal profession in the United States. Cohens *v.* Virginia, 6 Pet., 410; Clark *v.* Matthewson, 12 Pet., 170.

No rule can be a sound one which, by its legitimate operation, will deprive a party of his right to have his case submitted to the appellate court; and where, as in this case, personal service was impossible in the appellate court, through the act of the defendant in error, it must be held that publication, according to the law of the jurisdiction, is constructive notice to the party, provided the record shows that process was duly served in the subordinate court, and that the party appeared and litigated the merits. Constructive notice, says Mr. Justice Baldwin, in Hollingsworth *v.* Barbour et al., 4 Pet., 475, can only exist in the cases coming fairly within the provisions of the statutes authorizing the courts to make orders for publication, and providing that the publication, when made, shall authorize the courts to decree. Regina *v.* Lightfoot, 26 Eng. L. and Eq., 177.

As stated by this court in Harris *v.* Hardeman et al., 14 How., 339, a judgment upon a proceeding *in personam* can have no force as to one on whom there has been no service of process, actual or constructive, and who has had no day in court or notice of any proceeding against him. Judgment in that case had been rendered without any sufficient notice, either actual or constructive, and of course it was held to be irregular; but the opinion of the court clearly recognises the principle that constructive notice in certain cases may be sufficient to bind the party. Every person, as this court said in the case of the Mary, 9 Cran., 444, may make himself a party to an admiralty proceeding, and appeal from the sentence; but notice of the controversy is necessary, in order to enable him to become a party. When the proceedings a e against the person, notice is served personally, or by publica-

tion; but where they are *in rem*, notice is served upon the thing itself. Common justice requires that a party, in cases of this description, should have some mode of giving notice to his adversary; and where, as in this case, the record shows that the defendant appeared in the subordinate court, and litigated the merits there to final judgment, it cannot be admitted that he can defeat an appeal by removing from the jurisdiction, so as to render a personal service of the citation impossible. On that state of facts, service by publication, according to the law of the jurisdiction and the practice of the court, we think, is free from objection, and is amply sufficient to support the judgment of the appellate court. Mandeville et al. *v.* Riggs, 2 Pet., p. 489; Hunt et al. *v.* Wickliffe, 2 Pet., 214.

2. It is insisted, in the second place, by the counsel of the plaintiffs, that the court erred in allowing the decree to go to the jury as evidence of the value of the hire of the slaves subsequently to the fourth day of February, 1854. That theory overlooks the fact, that testimony had been introduced by the present defendants showing the value of the slaves at the time of the trial; and that the decree was to be taken in connection with the parol testimony, showing that the slaves were still living, and in the possession of the parties originally charged with their abduction. No evidence had been offered by the defendants, and, in view of the circumstances, we think the charge was correct, and that the prayer for instruction was properly refused.

3. While the cause was pending on the chancery side of the court, on motion of the plaintiffs, the court struck out the answer of the defendants, and it is now insisted that the action of the court in that behalf was erroneous. All we think it necessary to say, in reply to this objection, is to remark that the cause was subsequently transferred to the law docket without objection, and that a bill of exceptions does not bring into this court any of the prior proceedings for revision. Whatever may be the practice in the State courts, counsel must bear in mind that there is a broad distinction between a suit at law and a suit in equity, and must understand that this court cannot and will not overlook that distinction.

The judgment of the District Court is affirmed, with costs.