746 A.2d 379

## In re ADOPTION/GUARDIANSHIP NO. T97036005.

### In re Adoption/Guardianship Nos. T98097012, T98265014, T98198001.

### Nos. 30, 32 Sept. Term, 1999.

### Court of Appeals of Maryland.

### Feb. 15, 2000.

Hannah E.M. Lieberman and Daniel Hatcher (Pauline Mandel and Mark Friedenthal, Legal Aid Bureau, on brief), Baltimore, for petitioners.

C.J. Messerschmidt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Stephen E. Harris Public Defender, Michael R. Braudes, Asst. Public Defender, Baltimore, brief of Public Defender as amicus curiae—filed on behalf of petitioner.

Gary S. Posner, Whiteford, Taylor & Preston, LLP, Mitchell Y. Mirviss, Venable, Baetjer and Howard, LLP, Baltimore, brief of amici curiae L.J., et al.—filed on behalf of appellants.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and THEODORE G. BLOOM (retired, specially assigned), JJ.

RAKER, Judge.

The children in these four consolidated cases, all foster children in the care of the Baltimore City Department of Social Services (BCDSS), had previously been adjudicated Children In Need of Assistance (CINA) pursuant to Maryland

Code (1973, 1998 Repl.Vol., 1999 Supp.) § 3–812 of the Courts and Judicial Proceedings Article. In each case, BCDSS filed in the Circuit Court for Baltimore City a petition for guardianship with the right to consent to adoption or long-term care short of adoption.[1] Each child was denied a hearing on the merits of the petition. In each case, after denying the child's request for a hearing on the merits, the trial court granted the petition over the child's objection, thereby terminating the parents' parental rights.

The primary issue we must decide in each case is whether the trial court violated the constitutional and/or statutory rights of the children by granting the petition of BCDSS to terminate parental rights when both parents either affirmatively consented or were statutorily deemed to have consented, without first providing the children with a meaningful opportunity to be heard on the merits of the petition. We shall hold these children had this right, and accordingly, we shall reverse.

## I. Background

The statutory framework in Maryland to ascertain whether a child is in need of assistance, and to protect such a child, is set out in the Juvenile Causes Act, Maryland Code (1973, 1998 Repl.Vol., 1999 Supp.) §§ 3–801 to 3–837.1 of the Courts and Judicial Proceedings Article,[2] and Title 5, subtitles 3, 5 and 7 of the Family Law Article,[3] and as implemented by Maryland Rules 9–101 through 9–113.

---

**1.** The grant of this petition terminates the parental rights of the parents. *See* Maryland Code (1984, 1999 Repl.Vol., 1999 Supp.) § 5–317(f) of the Family Law Article ("A decree of guardianship ... terminates the natural parents' rights, duties, and obligations toward the child."). In this opinion, we shall use guardianship and termination of parental rights interchangeably.

**2.** All subsequent statutory references to Maryland Code (1973, 1998 Repl.Vol., 1999 Supp.) Courts and Judicial Proceedings Article shall be to "C.J."

**3.** All subsequent statutory references to Maryland Code (1984, 1999 Repl.Vol., 1999 Supp.) Family Law Article shall be to "F.L."

"Guardianship" as used in the statutes and rules refers to guardianship of a minor child, *see* F.L. § 5–307(b), and means "guardianship with the right to consent to adoption or long-term care short of adoption," F.L. § 5–301(e). A petition for guardianship may be filed by the executive head of a child placement agency, including the local department of social services, or by the attorney for the child. *See* F.L. § 5–317(b).

A petition for guardianship may be filed after a child has been adjudicated a CINA. After the State receives a report of suspected abuse or neglect, BCDSS must investigate the substance of the complaint and make a written report of its preliminary findings. *See* F.L. § 5–706. BCDSS may file a petition alleging that the child is a CINA under the Juvenile Causes Act. Upon a finding of a preponderance of the evidence, the court may order the child committed to the care and custody of BCDSS until such order is terminated by the court. C.J. §§ 3–820(c)(1)(ii), 3–825.

After the court adjudicates a child a CINA and commits the child to BCDSS, the Department must develop and implement a permanency plan that is based on the best interests of the child.[4] *See* F.L. § 5–525(b)(2). The court must hold a permanency planning review hearing no later than 11 months after the child enters an out of the home placement, *see* C.J. § 3–826.1(a)(1), and then conduct hearings to review the permanency plan no less frequently than every 6 months until commitment is rescinded, *see* C.J. § 3–826.1(f). At the review hearings, the court determines the necessity of continuing the commitment, the extent of compliance with the plan, the extent of progress toward alleviating the causes of the commitment, and the appropriateness of changing the plan. *See id.* The child who is the subject of these proceedings is a

---

4. Permanency plans can include the return of the child to the natural parent(s) or guardian, placement with relatives for purposes of adoption, guardianship or care and custody, adoption by a non-relative, permanent foster care with a specific caregiver, an independent living arrangement, or long-term foster care. *See* F.L. § 5–525(e)(2); C.J. § 3–826.1(c).

party to the review hearings, and is entitled to the assistance of counsel. *See* C.J. §§ 3–801(r); 3–821; 3–834.

If the permanency plan becomes adoption, BCDSS may petition the court for guardianship.[5] *See* F.L. § 5–525.1. The court is then directed to schedule the termination of parental rights hearing in lieu of the next 6 month review hearing. *See* C.J. § 3–826.1(e)(2). The child's party status continues in the guardianship proceedings. *See* C.J. § 3–801(r); Rule 11–101(a).

Procedurally, BCDSS initiates termination of parental rights proceedings by filing a petition. *See* Rule 9–103. BCDSS must then serve the court-issued show cause order on the parents. *See* Rule 9–105(a), (b)(2). Rule 9–107 provides that "[a]ny person having a right to participate in a proceeding for adoption or guardianship may file a notice of objection to the adoption or guardianship" and that, except in case of out-of-state service, "any notice of objection to an adoption or guardianship shall be filed within 30 days after the show cause order is served." The show cause order states the thirty-day time period in which an objection to the petition may be filed. *See* Rules 9–105(h), 9–107(b)(1). Service of the show cause order triggers the running of this thirty-day period. *See* Rule 9–107(b)(1).

If a petition for guardianship is filed after a juvenile proceeding in which the child has been adjudicated a CINA, a petitioner shall also give notice of the filing of the petition for guardianship to the attorney who represented a natural parent in the juvenile proceeding and the attorney who represented the minor child in the juvenile proceeding. Notice to the attorney for the child must be in the form of copies of the show cause order and petition, and must be sent by first-class mail. *See* F.L. § 5–322(a)(ii); Rule 9–105(f).

Before entering a decree of adoption, the court must hold a hearing. *See* F.L. § 5–324.1. In a "contested" guardianship

---

**5.** Under the statute, children may also initiate termination of parental rights proceedings. *See* F.L. § 5–317(b).

action, prior to entering a judgment of guardianship, the court must hold a hearing on the merits and make on the record findings as required by F.L. § 5–313. *See* Rule 9–109. Once an objection is noted by a party, the petition becomes contested. The court must be satisfied by clear and convincing evidence that it is in the best interest of the child to terminate the natural parents' rights as to that child. *See* F.L. § 5–313(a); *Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

A parent may affirmatively consent to a petition to terminate parental rights pursuant to F.L. § 5–314; parental consent also may be statutorily deemed. If a parent does not note a timely objection, the court then deems the parent to have consented by operation of law. *See* F.L. § 5–322(d). The court may waive the notice requirement to a parent if the parent cannot be located after reasonable efforts are unavailing. *See* F.L. § 5–322(c). When this occurs, the court may consider the parent to have consented to termination. *See* F.L. § 5–322(d). When each parent affirmatively consents, or is deemed to have consented, F.L. § 5–317 provides that the court may grant the decree of guardianship only after any investigation and hearing the court considers necessary. The statute does not address the situation presented herein, i.e., when a child, but not the parent, objects to the guardianship.

## II.   *The Individual Cases*

With this statutory framework in mind, we turn to the facts of the cases before the Court.

### A.   *Jamal L., No. T98097012*

Jamal L. was born on November 15, 1988. He appeals from the termination of his natural parents' parental rights. He came into the custody of BCDSS on July 12, 1995 under an Order of Shelter Care issued by the Juvenile Court pursuant to statute. He was adjudicated a CINA on August 21, 1995 and committed to BCDSS for relative placement on September 21, 1995. On April 24, 1998, BCDSS filed a petition for

guardianship with the right to consent to adoption or long term care short of adoption pursuant to F.L. § 5–317.

Jamal's mother, Carolyn M., was served with the petition and show cause order. She did not object within the 30-day time limit. BCDSS filed a motion to waive notice of the petition to Jamal's father, Jamal L., Sr. At a pre-trial conference before a Master of the Circuit Court, the Master found that Ms. M. had defaulted and recommended the court grant BCDSS' motion to waive notice to Jamal's father, Mr. L., pursuant to F.L. § 5–322(c).

Ms. M. was unrepresented by counsel. On November 6, 1998, at the hearing on the petition before the Circuit Court, she requested a postponement in order to obtain counsel. She told the court that she had not understood the petition or the show cause order and that she objected to the termination of her parental rights, and requested the court to vacate the consent. The court denied her requests and proceeded with the hearing. The court granted BCDSS' request to waive notice to Jamal's father and deemed both parents to have consented to the termination.

At the hearing, Jamal was represented by counsel. He objected to the petition and requested that the court conduct a trial on the merits, or in the alternative, hold the case *sub curia* pending the decision of the Court of Special Appeals in the case of Christopher C., *In re Adoption/Guardianship No. T97036005*, No. 783, Sept. Term, 1998 (Md.Ct.Spec.App. Feb. 10, 1999). In support of his request, Jamal proffered the following: that Jamal and three caseworkers believed that Jamal's permanency plan developed by BCDSS pursuant to F.L. § 5–525(b)(2), (e), and (f), was reunification with his mother, not adoption; that the mother, who had been living with her mother, was near the top of a waiting list for public housing, had a full-time job, and was attending parenting classes; and that Jamal wanted to be with his mother.

The Circuit Court denied both requests, granted the petition terminating the parents' rights and entered a decree awarding guardianship to BCDSS. A timely appeal to the

Court of Special Appeals was noted on Jamal's behalf and this Court issued a writ of certiorari on its own motion before review by that court.

## B. *Dimitri D., No. T98265014*

Dimitri D. was born on November 5, 1989. He appeals from the termination of his natural parents' parental rights. He came into the care and custody of BCDSS and was adjudicated a CINA on October 29, 1996. BCDSS filed a petition for guardianship with the right to consent to adoption or long-term care short of adoption on September 30, 1998. Dimitri's father, Dimitri D., in prison at the time the petition was filed, executed a written consent granting BCDSS' request for guardianship with the right to consent to adoption or long-term care short of adoption of Dimitri. Valerie G., Dimitri's mother, was served on October 22, 1998, with the show cause order and petition, but she did not file a notice of objection within 30 days. She was deemed to have consented by operation of law.

Dimitri was represented by counsel at the hearing in the Circuit Court. His counsel objected to the court granting the petition based on his parents' consent, and requested a post-ponement and trial on the merits. In support of this request, counsel proffered that Dimitri frequently visited his father in prison, that he wished to be reunited with his mother and that he wanted a relationship with his parents. The court denied Dimitri's request for a hearing on the merits and granted the Department's petition. A timely appeal to the Court of Special Appeals was noted on Dimitri's behalf, and this Court issued a writ of certiorari on our own motion.

## C. *Iesha E., No. T98198001,*

Iesha E. was born on January 28, 1991. She appeals from the termination of her natural parents' parental rights. She was adjudicated a CINA and committed to the care of BCDSS in 1996. BCDSS filed a petition for guardianship with the right to consent to adoption or long term care short of adoption of Iesha on July 17, 1998. Counsel was appointed to

represent Iesha. Iesha's mother, Valerie G., and her father, Anthony E., were both served with the petition and show cause order but neither objected. At the hearing before the Circuit Court on March 19, 1999, Iesha's counsel requested that the court conduct a trial pursuant to F.L. § 5–313. In support of her request, she proffered the following: that Iesha had bonded with her parents and desired to continue her relationship with them and her siblings; that her mother would testify at the hearing that she and Anthony E., the father, had regular contact with Iesha; that Dimitri D., her brother, would testify that he has a relationship with Iesha and that he and Iesha talk about their mother; and that Iesha's grandmother would testify that Iesha has a relationship with and feelings towards her parents and siblings.

The Circuit Court denied Iesha's request for a trial on the merits, noting that both parents were deemed to have consented to the petition by operation of law. The court held that Iesha lacked standing to request a hearing, granted the petition and entered a decree of guardianship. A timely appeal to the Court of Special Appeals was noted on behalf of Iesha and this Court issued a writ of certiorari on our own motion before consideration by that court.

### D. *Christopher C., No. T97036005*

Christopher C. was born on April 9, 1989. He appeals from the termination of his natural parents' parental rights. BCDSS filed a petition for guardianship with the right to consent to adoption or long-term care short of adoption of Christopher on February 5, 1997. Christopher had been adjudicated a CINA on June 23, 1995. The Circuit Court appointed counsel to represent Christopher on February 19, 1997. Christopher's mother, Patricia W., was served with the petition on August 28, 1997. She did not respond within the statutorily required 30-day period. Because BCDSS was unable to locate Christopher's father, Deconze C., for service, BCDSS moved to waive notice to him of the proceedings. Pretrial conferences were scheduled on September 25 and October 30, 1997, and January 22, 1998, although the record is

unclear whether conferences were held in September or October. A pretrial hearing was held in January, 1998, followed by a settlement conference in April, 1998. The court set a merits hearing on the petition for May 1, 1998.

At that hearing, Christopher's counsel requested a postponement to ascertain Christopher's views on the petition. The court denied the motion to reset the proceedings and granted BCDSS's petition to waive notice to Christopher's father.

Christopher's counsel advised the court that she had not decided whether to oppose the petition because she had reason to believe that terminating Christopher's parents' rights would be therapeutically contraindicated, that she wished to investigate that issue further, and that she was uncertain of Christopher's views of the matter. She argued that Christopher was a party to the guardianship proceedings and that he had a right to present evidence on the statutory factors bearing on the determination of the best interest of the child. The court inquired whether it would "need to consider those factors if there are two [parental] consents." Counsel maintained that, because the child's position is one of the statutory factors the court must consider in deciding whether to grant the petition, "the child's voice must be heard." BCDSS opposed the postponement, arguing that Christopher's position and any evidence he may present was irrelevant. Where both parents have consented or have been deemed to consent, BCDSS argued, the case is over, and the court need not consider anything more than the validity of the paperwork.

After the court reviewed the circumstances that caused Christopher to come into foster care, the inability to locate the father, and the failure of the mother to object, the court found it in Christopher's best interest to grant the petition for guardianship and entered the decree. A timely appeal was noted on Christopher's behalf to the Court of Special Appeals. In an unreported opinion, that court affirmed the Circuit Court's denial of Christopher's motion for a postponement, holding that the denial was not an abuse of discretion. The

court did not reach the merits of his appeal. This Court granted Christopher's petition for writ of certiorari.

### III.

Respondent maintains that once the parents consent, either affirmatively or by having been deemed to have consented by operation of the statute, then the child's view is irrelevant and the child no longer has standing to be heard on whether termination is in his or her best interests. No statute requires that an evidentiary hearing be held when parents consent to their children's placement in guardianship. Whatever interest a child may have in continuing the legal relationship between himself and his natural parents who have demonstrated their own lack of interest in the relationship properly is protected by leaving to the trial court the determination of whether an evidentiary hearing is needed. F.L. § 5–317(c) provides that except as provided in F.L. §§ 5–313 and 5–313.1, the court may grant a decree awarding guardianship only after any investigation and hearing the court considers necessary. BCDSS contends that based on the language of F.L. § 5–317(c), the decision as to whether to conduct an evidentiary hearing, where the parents have consented, lies within the discretion of the court, thereby permitting the court to make a case-by-case determination of the necessity of an evidentiary hearing. This interpretation suggests that the requirement in Rule 9–109 of a hearing on the merits in every "contested" guardianship action means that such hearing is required only when the action is contested by the parents, not when it is contested by the child.

The four children emphasize that the question presented is a narrow one: whether the trial court may cut off a child's legal connection to parents and family members by the application of a procedural shortcut—entry of a default [6] judg-

---

**6.** BCDSS criticizes the children's use of the term "default judgment." BCDSS points out that, as we held in *In re Adoption/Guardianship No. 93321055*, 344 Md. 458, 490–91, 687 A.2d 681, 696–97 (1997), a failure

ment—without giving the child an opportunity to be heard on the guardianship. They argue that the statutory scheme for long-term guardianship and termination of parental rights, taken as a whole and in conjunction with the Maryland Rules, confers on them the right to the hearings they sought, and that the Legislature clearly intended that children have a sustained and meaningful voice throughout the course of the proceedings which affect them directly.

The plain meaning of these provisions, according to the children's view, is as follows: A child in a guardianship proceeding, who has previously been adjudicated a CINA, is a party to the proceeding, because C.J. § 3–801(r) defines a "party," for purposes of the Juvenile Causes Act, to include a child who is the subject of a petition. *See also* Rule 11–101(a), "Statutory definitions" (incorporating into the Rules governing juvenile causes the definition of party in C.J. § 3–801). Parties are entitled to be heard. The child is entitled to the assistance of counsel at every stage of any proceeding under the Juvenile Causes Act (with certain exceptions not here relevant) based on C.J. § 3–821(a); and F.L. § 5–323(a)(iv) provides for appointment of counsel for the child. BCDSS is required to give notice of the filing of the petition for adoption or guardianship to each person whose consent is required. *See* F.L § 5–322(a)(1)(i). In addition to notice of filing as required under F.L. § 5–322(a)(1)(i), BCDSS is required to give notice of the filing of the petition for guardianship to the attorney who represented the minor child in the juvenile proceeding, *see* F.L. § 5–322(a)(1)(ii), and must send a copy of the petition and the show cause order to that attorney, *see* Rule 9–105(f). Rule 9–107 permits any person having a right to participate in a proceeding for adoption or guardianship to file a notice of objection to the adoption or guardianship, including a statement of the reasons for the objections and a request for the appointment of an attorney, the objection to be filed within 30 days after the show cause order is served.

---

to file a notice of objection is not a default under Maryland Rule 2–613, which governs orders of default and default judgments.

The children argue that because a child is entitled to notice and counsel, a child who is the subject of the petition is entitled to object timely to the petition. Rule 9–109 requires the court to hold a hearing on the merits in a contested guardianship or adoption action. In the children's view, once a child has objected, the petition becomes a "contested guardianship action," thereby requiring the court to hold a hearing on the merits. When the court holds a hearing in a guardianship action, Rule 9–109(b) requires the court to "make the findings required by Code, Family Law Article, § 5–313 on the record."

As support for the children's position, they look to this Court's recent decision in *In re Adoption/Guardianship Nos. 11387 and 11388*, 354 Md. 574, 731 A.2d 972 (1999). There we held that a natural parent's statutory right to counsel in a certain adoption-related hearing entailed that the natural parent had a right to an evidentiary hearing. *See id.* at 583–84, 731 A.2d at 977.

We agree with the children that under the circumstances presented herein, they have a right to a hearing on the merits of BCDSS' petitions. Because we shall hold that the denial of a hearing on the merits violates the child's statutory rights, we shall not reach the constitutional question. *See Department of Corrections v. Henderson,* 351 Md. 438, 451, 718 A.2d 1150, 1156–57 (1998) (declining to reach constitutional issue when matter may be resolved on non-constitutional basis); *Professional Nurses v. Dimensions,* 346 Md. 132, 138, 695 A.2d 158, 161 (1997) (same).

## IV.

### A. The Child's Party Status

We believe that the express provisions of the Courts and Judicial Proceedings Article confer party status on the child. C.J. § 3–801 defines words as used in Subtitle 8 of the Courts and Judicial Proceedings Article, Juvenile Causes. C.J. § 3–801(a) states that "[i]n this subtitle, the following

words have the meanings indicated."  C.J. § 3–801(r) defines "party":

> "Party" includes a child who is the subject of a petition, the child's parent, guardian or custodian, the petitioner, and an adult who is charged under § 3–831 of this subtitle.

The plain language of C.J. § 3–804(a) makes it clear that "a child who is the subject of a petition" under Subtitle 8 includes a child in termination of parental rights proceedings who previously has been adjudicated a CINA.  C.J. § 3–804(a) provides that the Circuit Court, sitting as the juvenile court, "has exclusive original jurisdiction" over "all termination of parental rights proceedings," where the child "is under the jurisdiction of the Juvenile Court and previously has been adjudicated a child in need of assistance."  Because a child who is the subject of a petition under Subtitle 8 is a party, and a petition to terminate parental rights of the parents of a CINA comes under Subtitle 8, it follows that the children in the cases before us are parties to the actions upon BCDSS' petitions.

The conclusion that a child who is the subject of a petition to terminate parental rights is a party to the proceedings upon that petition is reinforced by the procedural context, discussed above, in which such a petition is filed.  BCDSS argues that in a guardianship, adoption or termination action, BCDSS files a new petition, and the action is separate and distinct from the CINA proceeding, not a continuation of the CINA action.  *See* Rule 11–501(d).  BCDSS is incorrect in asserting, however, that the child's party status does not continue with the new petition.  The definition of a party contained in C.J. § 3–801(r) governs the child's role in the guardianship proceedings as well as in the CINA proceedings; indeed, it governs the child's role in all cases within the jurisdictional grant of C.J. § 3–804.  We hold that the child is a party to the guardianship proceedings as well as to the CINA proceedings.[7]

---

7. The Legislature's decision to include the child who is the subject of a petition as a party to the procedure upon the petition also serves the efficient administration of justice, for if the child were not deemed a

The relevant provisions of the Family Law Article and the Courts and Judicial Proceedings Article create a unified process. It would not be logical to impute to the Legislature an intent to make the child a party to procedures by which the child is committed to the custody of a local department, adjudicated a CINA, and periodically reviewed for permanency planning, only to then deprive the child of that very status when the process turns toward adoption or guardianship with the right to consent to adoption, and seeks to sever the child's legal relationship with the parents. We hold that in creating the statutory scheme governing the status of a child in a termination of parental rights action following a CINA action, the Legislature intended to make the child a party to the proceeding.

It is well established that a parent has a liberty interest in the parent-child relationship. *See Stanley v. Illinois*, 405 U.S. 645, 651–52, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). To date, the Supreme Court has declined to decide whether the child has an interest in the parent-child relationship to match the

---

party by statute, it would likely be necessary to join the child as a party under Rule 2–211. Rule 2–211 provides:

> Except as otherwise provided by law, a person who is subject to service of process shall be joined as a party in the action if in the person's absence
> (1) complete relief cannot be accorded among those already parties, or
> (2) disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action or may leave persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the person's claimed interest.

Rule 2–211(a).

The very nature of the action before us may impair the child's ability to protect an interest relating to the subject of the action. We have held that "[t]he requirement that necessary parties be joined exists to assure that a person's rights are not adjudicated unless that person has his or her day in court." *Fairbanks v. McCarter*, 330 Md. 39, 45, 622 A.2d 121, 124 (1993). *See also Bender v. Secretary, Dep't of Personnel*, 290 Md. 345, 351, 430 A.2d 66, 69 (1981); *Newark Trust Co. v. Talbot Bank*, 217 Md. 141, 147, 141 A.2d 516, 519 (1958) We have also held that important interests are at stake for the child in the parent-child relationship. *See Green v. Sollenberger*, 338 Md. 118, 128–29, 656 A.2d 773, 778 (1995).

parent's. *See Michael H. v. Gerald D.*, 491 U.S. 110, 130, 109 S.Ct. 2333, 105 L.Ed.2d 91, (1989). In a case factually similar to the cases before us, however, the Court of Special Appeals held that a child, no less than the parent, has a constitutionally protected liberty interest in the preservation of parental rights. *See In re Adoption/Guardianship No. 6Z970003*, 127 Md.App. 33, 51, 731 A.2d 467, 477 (1999).[8] As we have indicated, we do not reach the constitutional question. We recognize, however, that a child ordinarily has an interest in maintaining a close familial relationship with siblings, grandparents, aunts, uncles and cousins. *Smith v. Organization of Foster Families*, 431 U.S. 816, 844, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) (in dicta, discussing the importance of the emotional attachments arising out of the familial relationship).

### B.   The Right to be Heard

█ Common law principles establish that a party to an action ordinarily has a right to be heard. Relying on common law principles, the Supreme Court long ago stated that "[p]ar-

---

8. In *In re Adoption/Guardianship No. 6Z970003*, 127 Md.App. 33, 51, 731 A.2d 467, 477 (1999), Justus K., the subject of the petition for guardianship with the right to consent to adoption or long-term care short of adoption, had been adjudicated a CINA prior to the filing of the petition. *See id.* at 37–38, 731 A.2d at 469–70. Through his counsel, Justus opposed the petition, requesting a hearing on the merits. The District Court, sitting as the Juvenile Court in Montgomery County, granted the guardianship petition without a hearing, ruling that because Justus's consent was not required, he had no standing to object and hence no right to be heard.

The Court of Special Appeals concluded that there were no statutory grounds to require the trial court to hold a hearing on a petition for guardianship when neither natural parent withholds consent; a hearing is in order in those circumstances only when the court deems a hearing necessary. *See id.* at 43, 731 A.2d at 473. The court went on to consider constitutional grounds, and reversed, holding that Justus was constitutionally entitled to an opportunity to be heard on whether the guardianship would be in his best interest, even though his consent to the petition was not necessary. *See id.* at 57, 731 A.2d at 481.

As we have indicated, we do not reach the constitutional question. We disapprove the Court of Special Appeals' holding that when a CINA action precedes a guardianship petition, the child who is the subject of the petition is not statutorily entitled to an opportunity to be heard on the question of whether the guardianship would be in his best interest.

ties whose rights are to be affected are entitled to be heard." *Baldwin v. Hale,* 68 U.S. (1 Wall.) 223, 233, 17 L.Ed. 531 (1864); *see also Nations v. Johnson* 65 U.S. (24 How.) 195, 203, 16 L.Ed. 628 (1860); *Boswell's Lessee v. Otis,* 50 U.S. (9 How.) 336, 350, 13 L.Ed. 164 (1850). In addition, under Maryland law two statutory incidents of party status in a termination of parental rights proceeding also lead us to conclude that when the child opposes the petition, the child is entitled to a hearing: the right to assistance of counsel and the right to receive notice and to object. Each of these rights implies the further right to a hearing.

C.J. § 3–821(a) provides that "a party is entitled to the assistance of counsel at every stage of any proceeding under [Subtitle 8, Juvenile Causes]," with exceptions not applicable here; C.J. § 3–804(a)(2) specifies that termination of parental rights proceedings are included among proceedings under Subtitle 8. These provisions, according to their plain meaning, afford a child in a termination of parental rights proceeding the right to counsel.

Respondent cites F.L. § 5–323(a)(1)(iv), providing for appointment of separate counsel for the child "in an involuntary termination of parental rights," and argues that because the parents have consented or are deemed to have consented in these cases, the termination proceeding is not involuntary and therefore the child has no right to counsel. This argument lacks merit, because under the circumstances presented here, C.J. § 3–821(a) is the source of this right.

The right to be represented by counsel in a proceeding implies the right to be heard in that proceeding. In *In re Adoption/Guardianship Nos. 11387 and 11388,* 354 Md. 574, 731 A.2d 972 (1999), we considered a natural mother's right to participate in and present evidence at a status hearing related to the child's adoption. The purpose of the hearing was to review the child's status after the adoption proceedings had been delayed. We held that the mother had a statutory right to counsel. This right to counsel established both party status, and the right to participate and present evidence in the

review hearing. *See id.* at 583–84, 731 A.2d at 977. The child's right to assistance of counsel likewise establishes the right to an evidentiary hearing in termination of parental rights cases. It makes little sense to grant the child the right to assistance of counsel but to preclude counsel on behalf of the child from participating in the proceedings.

The rights of the child to notice and an opportunity to object under the Family Law Article and the Rules also indicate that the child has a right to a hearing. F.L. § 5–322(a)(1)(ii)2. provides that where a petition is filed for guardianship of a child who has been adjudicated a CINA, the petitioner must give notice of the filing of the petition to "the attorney who represented the child in the juvenile proceeding," i.e., the CINA proceeding. Rule 9–105(f) expands this requirement somewhat, stating that

> [t]he petitioner in an action for guardianship of a child who has been adjudicated a child in need of assistance in a prior juvenile proceeding shall also send a copy of the petition and show cause order by first class mail to . . . the attorney who represented the child in the juvenile proceeding.

F.L. § 5–322(a)(1)(ii)2. was added to the Code in 1996. *See* 1996 Maryland Laws ch. 177, at 1580. The Bill Analysis explains the purpose of the provision:

> Notification allows the attorney who represented the child in the juvenile proceeding to file a notice of objection to the petition for guardianship. If the attorney who represented the child in the juvenile proceeding does not file a notice of objection within the time period stated in the show cause order, the court considers the attorney to have consented to the guardianship.

Senate Judicial Proceedings Committee, Bill Analysis on House Bill 20 (1996). Rule 9–105(f) advances this legislative goal by requiring the show cause order to be sent to the attorney along with the petition, because it is the show-cause order that states the time period within which a notice of objection must be filed. *See* Rule 9–105(h) (setting forth form of show cause order).

It is apparent, then, that the purpose of notice to the child's attorney is to provide an opportunity to object. Rule 9–107(a) gives effect to this purpose, providing that "[a]ny person having a right to participate in a proceeding for adoption or guardianship may file a notice of objection to the adoption or guardianship." Inasmuch as we have concluded that the child is a party, the child is included in the class of persons "having a right to participate." A person filing a notice of objection must do so within 30 days after service of the show cause order. Rule 9–107(b).

Rule 9–109(a), finally, makes explicit the point of the foregoing: that the purpose of a party's rights to notice and to the opportunity to object is to provide the party an opportunity to be heard on the merits. Rule 9–109(a) requires that "[t]he court shall hold a hearing on the merits in a contested guardianship action." "Contested" here has its ordinary meaning; a guardianship action becomes contested when a party interposes an objection to the granting of the petition. We conclude that because the child is a party to the guardianship petition, the child has a right to assistance of counsel and the right to notice of the petition and opportunity to object thereto.[9] These rights in turn entitle the child, when the child

---

9. It is not apparent, from the statutes and rules, who is to be the child's attorney, or at what stage the attorney is to be appointed. The CINA attorney to whom the petition and show cause order must be mailed does not automatically become the child's attorney in the termination of parental rights proceeding, leaving many questions unanswered. For example, is an attorney to be appointed for the child, at the outset, in every termination of parental rights case? Or should counsel be appointed only if the CINA attorney files an objection? What are the obligations of the CINA attorney upon receiving the petition and show cause order? Must the CINA attorney conduct an investigation to determine whether an objection should be filed, and must counsel file the objection if the facts so warrant, even if he or she has not been appointed as counsel for the child for purposes of the guardianship or termination of parental rights proceeding? If so, how are the associated costs to be paid? And what is the nature of counsel's representation in the termination of parental rights case?

We shall direct the Rules Committee, in consultation with the appropriate legislative committees and affected agencies, to consider these issues.

objects to the petition, to a hearing on the merits of the petition.

Respondent urges that F.L. § 5–317(c) grants the trial judge discretion to deny a child who is the subject of a guardianship petition the right to a hearing. F.L. § 5–317(c) provides as follows:

Except as provided in §§ 5–313 and 5–313.1 of this subtitle, the court may grant a decree awarding guardianship only:

(1) after any investigation the court considers necessary; and

(2) with the consent of each living natural parent of the child.

F.L. §§ 5–313 and 5–313.1 state the conditions under which a guardianship petition may be granted where the parents do not consent.[10] Respondent argues that when they have con-

---

**10.** F.L. § 5–313 provides, in relevant part, as follows:

(a) In general.—A court may grant a decree of adoption or a decree of guardianship, without the consent of a natural parent otherwise required by §§ 5–311 and 5–317 of this subtitle, if the court finds by clear and convincing evidence that it is in the best interest of the child to terminate the natural parent's rights as to the child and that:

\*    \*    \*    \*    \*    \*

(2) in a prior juvenile proceeding, the child has been adjudicated to be a child in need of assistance, a neglected child, an abused child, or a dependent child;

\*    \*    \*    \*    \*    \*

(c) Required considerations.—In determining whether it is in the best interest of the child to terminate a natural parent's rights as to the child in any case, except the case of an abandoned child, the court shall give:

(1) primary consideration to the safety and health of the child; and

(2) consideration to:

(i) the timeliness, nature, and extent of the services offered by the child placement agency to facilitate reunion of the child with the natural parent;

(ii) any social service agreement between the natural parent and the child placement agency, and the extent to which all parties have fulfilled their obligations under the agreement;

(iii) the child's feelings toward and emotional ties with the child's natural parents, the child's siblings, and any other individuals who may significantly affect the child's best interest;

(iv) the child's adjustment to home, school, and community;

sented, the only other condition precedent to granting the petition is "any investigation the court considers necessary." Therefore, according to this argument, the decision as to whether to hold a hearing rests entirely within the court's discretion, and a case-by-case determination as to whether a hearing is necessary best serves the interest of each individual child. We disagree.

F.L. § 5–317 does not purport to provide an exhaustive list of conditions for granting a guardianship petition, preempting other provisions of law. We agree that if there were no other relevant provisions of law, and F.L. § 5–317(c) could be read in isolation, the negative implication of F.L. § 5–317(c) suggests that it is within the sound discretion of the trial judge to omit the hearing. But F.L. § 5–317(c) cannot be read in isolation. We hold that when the child timely requests a hearing and opposes the petition, the trial judge does not have discretion to deny the child's request for a hearing.

---

(v) the result of the effort the natural parent has made to adjust the natural parent's circumstances, conduct, or conditions to make it in the best interest of the child to be returned to the natural parent's home, including:

1. the extent to which the natural parent has maintained regular contact with the child under a plan to reunite the child with the natural parent, but the court may not give significant weight to any incidental visit, communication, or contribution;

2. if the natural parent is financially able, the payment of a reasonable part of the child's substitute physical care and maintenance;

3. the maintenance of regular communication by the natural parent with the custodian of the child; and

4. whether additional services would be likely to bring about a lasting parental adjustment so that the child could be returned to the natural parent within an ascertainable time, not exceeding 18 months from the time of placement, but the court may not consider whether the maintenance of the parent-child relationship may serve as an · inducement for the natural parent's rehabilitation; and

(vi) all services offered to the natural parent before the placement of the child, whether offered by the agency to which the child is committed or by other agencies or professionals.

F.L. § 5–313(d) states further required considerations, including whether the parent has abused or neglected the child or has been convicted of certain crimes.

### C. Considerations Required for Best Interest Finding

■  Rule 9–109(b) sets out the standards the trial court must apply when ruling upon a guardianship petition after a hearing on the petition:

> When the court holds a hearing in a guardianship action, it shall make the findings required by Code, Family Law article, § 5–313 on the record.

F.L. § 5–313 establishes a requirement of clear and convincing evidence and contains a detailed list of the factors the court must consider.

The parties disagree about the applicability of these provisions to these cases. BCDSS maintains that where the natural parents do not withhold consent to the guardianship, the trial court is not required to consider the factors set forth in F.L. § 5–313(c) and (d). BCDSS argues that F.L. § 5–313 is inapplicable when the parents have consented or are deemed to have consented to the termination of parental rights, relying on the language in F.L. § 5–313(a) that "[a] court may grant . . . a decree of guardianship, without the consent of the natural parent . . . if the court finds by clear and convincing evidence that it is in the best interest of the child to terminate the parents' parental rights as to the child." Because the parents consented or were deemed to have consented in these cases, BCDSS argues, no portion of F.L. § 5–313 applies. The children, on the other hand, maintain that Rule 9–109 makes the "required considerations" of F.L. § 5–313 applicable to hearings initiated at the request of the child.

We agree with the children. The best interest of the child must be determined only after the court considers the required factors listed in F.L. § 5–313(c) and (d).[11] By the plain

---

11. Paragraph 5 of F.L. § 5–313(d) provides that if the court finds that any of the circumstances or acts enumerated in paragraph (1)(v) of F.L. § 5–313(d) exists, the court must make specific findings on the record as to whether the return of the child to the custody of the natural parent poses an unacceptable risk to the future safety of the child. The statute requires the court to make these specific findings if (1) the natural parent has subjected the child to torture, chronic abuse, sexual abuse,

language of Rule 9–109, the court must consider the factors set out in F.L. § 5–313 whenever it conducts a hearing in a guardianship action. The required considerations in F.L. § 5–313(c) and (d) therefore apply in the present cases.

Although F.L. § 5–313(c) does not require the court to make express findings on the record as to each "required consideration" mandated by the statute, the record must reflect that the court considered each statutory factor. In the present cases, we can only speculate whether the required factors were considered. In Jamal L.'s case, for example, the trial judge stated:

> The Court, recognizing the facts and circumstances which brought the [child] into care and the fact that the [child] was found to be a child in need of assistance on September 21, 1995 and committed to the Department, has been in the department's care under an order of commitment as well as the facts and circumstances which brought the [child] into care and in light of [the child's] counsel's objection to the granting of the petition as well as the [child's] counsel's request for a trial in the face of two consents, based on all those facts and circumstances and issues, the Court finds it in [the child's] best interest to grant the Department's petition.

In the other cases, as a basis for the court's finding of the best interests of the child, the judge similarly recited only the procedural facts that the child had been placed in the care of BCDSS and had been adjudicated a CINA, including the facts and circumstances that had led to that placement and adjudication. It is unclear from the record whether the trial judge considered the required factors in any of the cases before us.

---

or chronic and life-threatening neglect or has been convicted of a crime of violence in this State as defined in Article 27, § 643B (or any other state if that act would be a crime of violence in this State) against the child, the other natural parent of the child, another child of the natural parent or any person who resides in the household of the natural parent; (2) the natural parent has been convicted of aiding or abetting, conspiring or soliciting to commit a crime of violence as described above; or (3) the natural parent involuntarily lost parental rights of a sibling of the child.

On remand, the trial court shall consider the factors set forth in F.L. § 5–313(c) and (d) and determine whether, by clear and convincing evidence, it is in the best interest of the child to terminate parental rights.

In three of the cases, the trial judge refused the requested hearing on the ground that the child lacked standing and was thus not entitled to a hearing. The refusal was error in each case.

The case of Christopher C. is in a somewhat different posture. The child's attorney requested a postponement of the decision on the guardianship petition, instead of requesting a hearing on the merits. The Court of Special Appeals affirmed the denial of the postponement, holding that the denial was not an abuse of discretion and that therefore there was no occasion to reach the question of whether the child had a right to a hearing. The petition for writ of certiorari in the case of Christopher C. accordingly poses the additional question of whether the Court of Special Appeals erred in affirming the trial court's ruling on purely procedural grounds and thereby failing to reach the merits of the issues presented. We disagree with the Court of Special Appeals, and therefore we answer this question in the affirmative.

It is clear from the record that the trial judge refused to grant the requested postponement because he considered the information, even if available, to be irrelevant to the decision on the petition when the parents had consented to it. The trial judge readily granted a postponement to gather such facts in the case of a sibling of Christopher C.;[12] in that case, the child's father had not consented.

---

12. Christopher and his brothers Quincy and Alexander were the subjects of three guardianship petitions before the court in the hearing on May 1, 1998. The mother never responded to notice of the petitions. The trial judge granted motions to waive notice to the fathers of Christopher and Quincy. Thus there were consents from both parents in the cases of Christopher and Quincy. Alexander's father, however, made a timely objection to the petition for guardianship of Alexander, and was present at the hearing. The hearing on the petition for guardianship of Alexander was postponed upon the request of the

As we have indicated, the required factors in F.L. § 5–313(c) and (d) apply when the child objects to the petition and requests a hearing. The trial judge's decision to refuse the postponement, therefore, was based on an error of law. *See Alston v. Alston,* 331 Md. 496, 504, 629 A.2d 70, 74 (1993) ("[E]ven with respect to a discretionary matter, a trial court must exercise its discretion in accordance with correct legal standards.").

## V.

■ We are not unmindful that the State of Maryland is under a federal mandate to achieve permanent placement for children in foster care and to reduce the time that these children spend "in the system." *See* Adoptions and Safe Families Act of 1997, Pub.L. No. 105–89, § 103(a), 111 Stat. 2115, 2118 (codified at 42 U.S.C. § 675(5)(E) (Supp. III 1997)). We appreciate the Department's view that to terminate parents' parental rights with less rather than more legal process speeds children on the route to adoption, and that any doubt in the minds of prospective adoptive parents about the child's availability for adoption can decrease the likelihood that adoption will occur. We reiterate our recent statement that "[o]nce it appears that reunification with their natural parents is not possible or in their best interest, the government has not only a special interest but an urgent duty, to obtain a nurturing and permanent placement for them, so they do not continue to drift alone and unattached." *In re Adoption/Guardianship No. 93321055,* 344 Md. 458, 492, 687 A.2d 681, 697 (1997). We agree with the conclusion of the Court of Special Appeals, however, in *In re Adoption/Guardianship No. 6Z970003,* 127 Md.App. 33, 56, 731 A.2d 467, 480 (1999), that the burden that would flow from the additional safeguard of requiring an evidentiary hearing would be minimal. The

attorney for the children, who explained that she needed more time to ascertain Alexander's feelings about his father. The trial judge denied a similar request regarding the hearing on the petition for guardianship of Christopher. The petition for guardianship of Quincy was granted without objection.

statute already requires notice of the filing of the petition to the attorney for the child in the CINA proceeding.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY IN CASE NO. 32 REVERSED AND CASE REMANDED TO THAT COURT FOR FURTHER PRO-CEEDINGS CONSISTENT WITH THIS OPINION. JUDG-MENT OF THE COURT OF SPECIAL APPEALS IN CASE NO. 30 REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY AND REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RE-SPONDENT.*