972 A.2d 845

**In re NAJASHA B.**

**No. 114, Sept. Term, 2008.**

Court of Appeals of Maryland.

June 8, 2009.

Meredith Esders (Legal Aid Bureau, Inc., Baltimore), on brief, for appellant.

Hilma J. Munson, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore), on brief, for appellees.

Nenutzka C. Villamar, Asst. Public Defender (Nancy S. Forster, Public Defender, Baltimore), on brief, for appellees.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

ADKINS, J.

In this CINA case,[1] we decide whether a juvenile court was obligated to hold an adjudicatory hearing to consider allega-

---

1. A "CINA" case refers to proceedings brought pursuant to Maryland Code (1974, 2006 Repl. Vol., 2008 Supp.), Title 3, Subtitle 8 of the Courts and Judicial Proceedings Article ("CJP") for the protection of children "coming within the provisions of [the] subtitle[.]" CJP § 3–802(a)(1). A " 'CINA' means a child in need of assistance" who requires court intervention because: "(1) The child has been abused, has been neglected, has a developmental disability, or has a mental

tions of neglect in a petition, notwithstanding the request for dismissal by the local department of social services ("DSS"), that was made with the consent of the child's parents. The child, through counsel, objected to dismissal, but was unsuccessful. We shall hold, based upon Maryland Code (1974, 2006 Repl. Vol., 2008 Supp.), Title 3, Subtitle 8 of the Courts and Judicial Proceedings Article ("CJP")(hereinafter "the CINA Subtitle"), the rights of the child as a party to a CINA petition, and the inherent role of the court in protecting the rights of minors, that the juvenile court erred in dismissing the petition on the basis that DSS, as the CINA petitioner, had a unilateral right to dismiss its petition.

## STATUTORY FRAMEWORK

In order for a child to be declared a CINA, a local DSS must first receive a "complaint from a person or agency having knowledge of facts which may cause a child to be subject to the jurisdiction of the court under [the CINA Subtitle.]" CJP § 3–809(a). Upon receipt of a complaint, "the local department shall file a petition under [the CINA Subtitle] if it concludes that the court has jurisdiction over the matter and that the filing of a petition is in the best interests of the child." *Id.* If the local DSS decides not to file a petition, within five days after this decision, it "shall inform in writing" certain persons about its decision and rationale. CJP § 3–809(b) The persons entitled to notice are: "(1) A child over the age of 10 who would have been the subject of the petition, if appropriate; (2) The parent, guardian, or custodian of the child who would have been the subject of the petition; and (3) Each person or agency that requested that a petition be filed." *Id.*

The person or agency that requested the petition may also request review of the local DSS's decision not to file a petition by the Secretary of Human Resources. CJP § 3–809(c).

---

disorder; and (2) The child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's needs." CJP § 3–801(f) and (g).

"Within 15 days after a request for review is received, the Secretary of Human Resources or the Secretary's designee, in consultation with the director of the local department, shall review the report and may direct the local department to file [the] petition within 5 days." CJP § 3–809(d). If the Secretary or Secretary's designee refuses to direct the local department to file a petition, then the person or agency that filed the complaint, or caused it to be filed, may file the petition. CJP § 3–809(e).

The CINA Subtitle provides for two hearings when a CINA petition is filed—an adjudicatory hearing and a disposition hearing. CJP Section 3–817(a), the provision principally at issue in this case, provides: "After a petition is filed under [the CINA Subtitle], the court shall hold an adjudicatory hearing." An adjudicatory hearing is defined as a hearing "to determine whether the allegations in the petition, other than the allegation that the child requires the court's intervention, are true." CJP § 3–801(c). After an adjudicatory hearing, a juvenile court shall hold a separate disposition hearing to determine whether a child is a CINA unless a petition is dismissed. CJP § 3–819(a). A disposition hearing is defined as a hearing to determine: "(1) Whether a child is in need of assistance; and (2) If so, the nature of the court's intervention to protect the child's health, safety, and well-being." CJP § 3–801(m).

The parties to a CINA proceeding may include a child who is the subject of a petition; the child's parent, guardian, or custodian; the petitioner; or an adult who is charged under CJP Section 3–828 with contributing to acts, omissions, or conditions rendering a child in need of assistance. CJP §§ 3–801(u) and 3–828(a). Under CJP Section 3–813(a) and (b), a child who is the subject of the petition is "entitled to the assistance of counsel at every stage of any proceeding" under the CINA Subtitle at State expense.

The juvenile court has exclusive original jurisdiction over CINA proceedings. *See* CJP § 3–803(a)(2). "In all judicial proceedings conducted in accordance with [the CINA Subtitle]

. . . , the court may direct the local department to provide services to a child, the child's family, or the child's caregiver to the extent that the local department is authorized under State law." CJP § 3–802(c)(1). Juvenile courts shall exercise this authority to "protect and advance a child's best interests." CJP § 3–802(c)(2).

## FACTS AND LEGAL PROCEEDINGS

On February 1, 2008, the Baltimore City Department of Social Services ("DSS"), appellee, filed a CINA Petition with Request for Shelter Care ("Petition"). The Petition alleged that on January 31, 2008, the Baltimore City Police ("Police") conducted a drug raid in Najasha B.'s parents' home and found five-year-old Najasha in the home without adult supervision. The Petition also alleged that (1) attempts to locate Najasha's parents were unsuccessful, (2) the Police found marijuana throughout the home, and (3) there were no known relative resources willing to provide care for Najasha. Najasha was consequently placed in emergency shelter care.

An emergency shelter care hearing was held on February 1, 2008 and Najasha's parents, Ms. A. and Mr. B., appellees, attended the hearing. The Circuit Court for Baltimore City, sitting as a juvenile court, denied DSS's shelter care request after the parties agreed to the entry of an "order controlling conduct" with the following terms: (1) Najasha "shall not be left in the custody of anyone but the parents and or relatives"; (2) Najasha's parents "shall not have any illegal substances in the home"; and (3) Najasha's parents "shall allow DSS to have announced and unannounced visits to the home." The juvenile court then scheduled an adjudicatory hearing for March 31, 2008.

On March 31, 2008, the juvenile court reset the adjudicatory hearing for April 28, 2008 and kept in place its order controlling conduct entered after the previous proceeding. On April 28, 2008, the court reset the adjudication hearing again and added a condition in its order that Najasha's parents "shall ensure [Najasha] attends school on a regular basis[.]"

The parties convened on May 9, 2008 for the scheduled adjudicatory hearing. At that time, DSS filed a motion requesting that the juvenile court dismiss their CINA petition. DSS informed the court that the "issues that brought this matter to the attention of the Court have been resolved and no further Court intervention is necessary at this time." The master recommended that the court grant DSS's motion and Najasha's parents did not object to the dismissal. Najasha's counsel objected, however, arguing that records from the Baltimore City School System showed that Najasha was not attending school on a regular basis. The juvenile court then granted DSS's dismissal request.

Najasha filed a Notice of Exception and Request for Hearing on May 14, 2008 in which Najasha's counsel took exception to the dismissal, contending that "an adjudicatory hearing should be held on the petition ... before the Court makes a determination as to whether to dismiss the petition." The juvenile court held a *de novo* exception hearing on June 23, 2008. At that hearing, DSS proffered what follows:

Your Honor, the reason—[DSS] was prepared to dismiss that day and as indicated the allegations in the Petition had been resolved. [DSS] had been working with the family. There were no outstanding issues at that time that [DSS] felt caused the matter to continue to need the attention of the Court. [DSS] was going to continue working with the family for probably another 30 days.

And, the issue that [Najasha's counsel] raised had to do with lack of attendance at school which was not even an allegation in [DSS's] petition nor did [DSS] intend to make an allegation. [Najasha] was—is 5 years old. There was some lack of attendance but I believe as the discussion went on before the Court that the child was of the age where she really wasn't even under compulsory education laws until the fall. The Court had a discussion with the parents before granting [DSS's] dismissal, obviously, about the importance of education and they dismissed the case. There is absolutely no reason for this case to continue and [DSS] does not intend to proceed with this case.

Najasha's counsel responded by arguing that CJP Section 3–817(a) requires the holding of an adjudicatory hearing. The juvenile court denied Najasha's exception, however, and dismissed the case, responding as follows:

I'm just not persuaded. I mean I think that when I read that section in [3–817(a) ] it does seem to indicate that after a Petition filed under this subtitle the Court shall hold an adjudicatory hearing. I'm reading that as meaning if [DSS] is continuing to pursue it.

\* \* \*

[T]here is actually a mechanism in [the CINA Subtitle] which will allow a Complainant, that's not your case, but a Complainant to file a Petition.

\* \* \*

But I think under the statutory statement under CINA it looks to me like it is [DSS] which is the moving party and I think that if they wish to withdraw the Petition or ask the Court to dismiss it based upon their motion, I think they have that right. It doesn't mean that if your client is concerned or wishes to file a separate Complaint and DSS then says we are not going to file a Petition in this case based upon their Complaint, I think under the statutory scheme you actually could file a Petition and just say we want to file a Petition then. But ... it is the Complainant who files the Petition and in this case [Najasha] is not the Complainant.

In its order, the juvenile court indicated that it accepted the following evidence in support of its exception denial: "[Najasha] has continued in the care of parents under an [order controlling conduct]. The issues that brought this matter to the attention of the Court have been resolved and no further Court intervention is necessary at this time." Najasha appealed to the Court of Special Appeals. On our own initiative, we issued a writ of certiorari to consider the following question:

Did the trial court err as a matter of law when it dismissed the Petition without holding an adjudicatory hearing as required by statute, court rules and the *parens patriae* doctrine?

## DISCUSSION

 The parties invoke the rules of statutory interpretation in addressing whether a juvenile court is required to hold an adjudicatory hearing once a petition is filed. "The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature." *Kushell v. Dep't of Natural Res.*, 385 Md. 563, 576, 870 A.2d 186, 193 (2005). "In order to ascertain the intent of the Legislature, we begin with the plain language of the statute, and if that language is clear and unambiguous, we look no further than the text of the statute." *Ishola v. State*, 404 Md. 155, 160, 945 A.2d 1273, 1276 (2008). "If, however, the meaning of the plain language is ambiguous or unclear, we seek to discern legislative intent from surrounding circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based." *Lewis v. State*, 348 Md. 648, 653, 705 A.2d 1128, 1131 (1998).

Najasha contends that the juvenile court erred when it failed to hold an adjudicatory hearing following the filing of a CINA petition, because once a petition is filed, Maryland law mandates that a court hold an adjudicatory hearing. She centers her argument on the CJP Section 3–817(a) provision directing that: "After a petition is filed under [the CINA Subtitle], the court shall hold an adjudicatory hearing." Najasha maintains that the legislature's use of the word "shall" in the statute manifests its intent to make mandatory the holding of an adjudicatory hearing.

Najasha argues, moreover, that the broader statutory scheme of the CINA Subtitle supports this interpretation. She highlights CJP Section 3–802(a) which states that the purpose of the Subtitle is to, *inter alia,* "provide for the care, protection, safety, and mental and physical development of

any child coming within the provisions of [the CINA Subtitle]" and "provide for a program of services and treatment consistent with the child's best interests[.]" She argues that juvenile judges have a distinct mandate to protect the interests of minors—a duty that flows from their inherent *parens patriae,* or " 'father of the country,' " jurisdiction of guardianship over minors. *See In re Danielle B.,* 78 Md.App. 41, 68–69, 552 A.2d 570, 583 (1989)(citing *Wentzel v. Montgomery Gen. Hosp.,* 293 Md. 685, 702, 447 A.2d 1244 (1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 790, 74 L.Ed.2d 995 (1983)). Najasha asserts that this duty is embodied in CJP Section 3–802—the CINA Subtitle purposes and construction provision—and that under CJP Section 3–804(b), the authority to terminate a CINA case lies with the court, and not DSS, due to the court's unique role as guardian and fact-finder. She points out that under CJP Section 3–804(b), once the "court obtains jurisdiction over a child, that jurisdiction continues in that case until the child reaches the age of 21 years, unless the court terminates the case." This, she sees as an indication that only the court may terminate the case, not DSS.

Najasha also claims the definition of an "adjudicatory hearing" as support for her position, which states: " 'Adjudicatory hearing' means a hearing under [the CINA Subtitle] to determine whether the allegations in the petition, other than the allegation that the child requires the court's intervention, are true." CJP § 3–801(c). According to Najasha, this provision "assumes that the mere filing of a Petition requires the court's intervention" and that the court's "duty to intervene is then discharged upon hearing whether the allegations in the Petition are true."

She also contends that her CJP Section 3–813 right to "the assistance of counsel at every stage of any proceeding" under the CINA Subtitle confers a right to an adjudicatory hearing. In *In re Adoption/Guardianship No. T97036005,* 358 Md. 1, 3, 746 A.2d 379, 380 (2000), we held that a child has a right to a hearing on the merits concerning a petition to terminate parental rights, notwithstanding the parents' consent to the termination. We reasoned that a child's party status, right to

assistance of counsel, and right to notice of the petition and opportunity to object thereto, entitle the child, when the child objects to the petition, to a hearing on the petition's merits. *Id.* at 19–20, 746 A.2d at 389. Najasha applies this reasoning and argues that here, it is "illogical to give the child party status and grant the child the right to counsel, only to prevent the child from participating in an adjudicatory hearing."

DSS and Najasha's parents, Ms. A. and Mr. B., (hereinafter collectively referred to as "Appellees" when advancing similar arguments) contend that the juvenile court properly dismissed the petition at DSS's request, because CJP Section 3–809 confers on DSS the discretion to file a petition and thus, the authorization to withdraw its petition prior to an adjudicatory hearing. According to Appellees, CJP Section 3–817(a) does not address whether DSS may seek dismissal of its own petition and must be read in light of the other CINA Subtitle provisions and its purposes overall.

Najasha's parents assert that under CJP Section 3–809, DSS not only has discretion to withdraw a petition, but must do so if the petition's filing is not in the child's best interests. They argue that DSS was no longer authorized to maintain a petition when it believed, after having had the opportunity to work with them and conduct further investigation, that it was no longer in Najasha's best interest to proceed with the case. This Section 3–809 obligation on DSS, they contend, was accomplished by asking the juvenile court to grant its dismissal request.

Appellees maintain that Section 3–809 manifests a legislative intent to vest in DSS the authority to determine whether to pursue court intervention. In support of their position, Appellees reference a memorandum prepared by the Foster Care Court Improvement Project Implementation Committee, a committee of the Maryland Judicial Conference tasked with assessing and making findings regarding the judiciary's processing of abuse and neglect cases. The Committee's memorandum, which prompted the Legislature to enact a CINA

statute separate from the statutory provisions addressing child delinquency, provided as follows:

> [T]he local department of social services will decide whether a CINA petition will be filed. The Committee believes that the local department of social services has the resources and is in the best position to investigate allegations of abuse and neglect. However, the Committee further believes that if the local department of social services makes a decision not to file a petition, the interested parties should be notified and a quick, efficient method for review should be made available. The person or agency that filed the complaint may file a CINA petition if the local department decides not to file a CINA petition.

*Memorandum from the Foster Care Court Improvement Project Implementation Committee and Members of the House Judiciary Committee,* Summary of Senate Bill 660 and House Bill 754 (February 14, 2001).

Appellees also argue that Section 3–802, the "[p]urposes and construction" provision of the CINA Subtitle, supports DSS's right to dismiss a petition without an adjudicatory hearing. This provision states that the purposes of the CINA Subtitle are:

> (1) To provide for the care, protection, safety, and mental and physical development of any child coming within the provisions of this subtitle;
>
> (2) To provide for a program of services and treatment consistent with the child's best interests and the promotion of the public interest;
>
> (3) To conserve and strengthen the child's family ties and to separate a child from the child's parents only when necessary for the child's welfare;
>
> (4) To hold parents of children found to be in need of assistance responsible for remedying the circumstances that required the court's intervention;
>
> (5) Except as otherwise provided by law, to hold the local department responsible for providing services to assist the

parents with remedying the circumstances that required the court's intervention;

(6) If necessary to remove a child from the child's home, to secure for the child custody, care, and discipline as nearly as possible equivalent to that which the child's parents should have given;

(7) To achieve a timely, permanent placement for the child consistent with the child's best interests; and

(8) To provide judicial procedures for carrying out the provisions of this subtitle.

CJP § 3–802(a). The CINA Subtitle is to be "construed liberally to effectuate these purposes." CJP § 3–802(b).

Appellees assert that the CINA Subtitle, in short, seeks to promote the best interests of the child and that this standard favors the maintenance of parental rights. *See In re Yve S.,* 373 Md. 551, 571, 819 A.2d 1030, 1042 (2003)(stating that "[t]he best interests of the child standard embraces a strong presumption that the child's best interests are served by maintaining parental rights"). This purpose, Appellees posit, is served by allowing DSS to work with parents and remedy the circumstances that caused it to become involved, through settlement and a petition's dismissal, without resort to a contested adjudication. A mandatory hearing would promote an adversarial environment, they say, reducing the incentive for communication among the parties, and would waste departmental and judicial resources by requiring an adjudication on a petition that is lacking a factual basis.

In addition to arguing that DSS had discretion to withdraw its petition without a hearing, Appellees maintain that the juvenile court had discretion to dismiss the petition prior to the adjudicatory hearing under CJP Section 3–804(b). This provision states that a court, after obtaining jurisdiction over a child, has continuing jurisdiction "until the child reaches the age of 21 years, unless the court terminates the case." Appellees interpret this provision as providing authorization for the court to terminate a case at any stage and DSS regards the Section 3–817(a) language that "the court shall hold an adjudi-

catory hearing" as directory, rather than mandatory, in light of 3–804(b).

We discussed the guidelines for determining whether a statute's use of "shall" is mandatory or directory in *In re James S.*:

"Certain forms and types of statutes are generally considered mandatory. Unless the context otherwise indicates the use of the word 'shall' (except in its future tense) indicates a mandatory intent. . . .

The directory character of a statute may likewise be indicated by the purpose of a statute and the manner in which its purpose is expressed. Thus it was said: 'Where words are affirmative, and relate to the manner in which the power or jurisdiction vested in a public officer or body is to be exercised, and not to the limits of the power or jurisdiction itself, they may and often have been construed as directory; . . .' Likewise, where the time, or manner of performing the action directed by the statute is not essential to the purpose of the statute, provisions in regard to time or method are generally interpreted as directory only.

Something in the nature of a presumption favoring a mandatory interpretation is suggested by judicial expressions that a statute is to be so interpreted unless its directory or discretionary character 'clearly appears.'

Finally, it deserves to be noted that the differences between mandatory and directory, or between prohibitory and permissive, represent a continuum involving matter of degree instead of separate, mutually exclusive characteristics. It has been said, for example, that because a statute has been classified for some purposes as directory does not mean that for all purposes it can 'be ignored at will.' "

286 Md. 702, 706–07, 410 A.2d 586, 588 (1980)(quoting 1A C. Sands, *Sutherland Statutory Construction* § 25.04 (4th ed. 1972)). Consistent with these guidelines, we have stated " 'that in the absence of a contrary contextual indication, the use of the word 'shall' is presumed to have a mandatory meaning . . . and thus denotes an imperative obligation incon-

sistent with the exercise of discretion.' " *Id.* at 709, 410 A.2d at 589 (citation omitted).

There are cases, however, in which we held the use of the word "shall" to be directory. In *Maryland State Bar Association, Inc. v. Frank,* 272 Md. 528, 532, 325 A.2d 718, 720 (1974), for example, we considered the nature of code provisions which required a bar association or state's attorney " 'to prosecute [attorney disciplinary] charges ... on a day specified [by order of court] ..., which day shall not be less than fifteen or more than sixty days from the date of said order[.]' " The petitioner contended that the disciplinary charges against him should have been dismissed because his case was not prosecuted within the sixty-day period. We held that the sixty-day time limitation was directory because "the broad policy of the law regulating conduct of attorneys authorized to practice law in this State is designed for the protection of the public, and that purpose would be largely vitiated if respondent's restrictive interpretation were to prevail." *Id.* at 533, 325 A.2d at 721 (citation omitted).

But the present case really does not turn on whether "shall" is directory or mandatory. Rather, we look to the purpose of the statute, the role of the court in CINA cases as contemplated by the Legislature and under common law, as well as the rights of the child. Viewing the issue from this perspective, and after considering both sides' arguments, we conclude that Najasha's position is more persuasive. The broad policy of the CINA Subtitle is to ensure that juvenile courts (and local departments of social services) exercise authority to protect and advance a child's best interests when court intervention is required. *See* CJP §§ 3–801(f) and 3–802. The State of Maryland has a *parens patriae* "interest in caring for those, such as minors, who cannot care for themselves" and "the child's welfare is a consideration that is of transcendent importance when the child might ... be in jeopardy." *In re Mark M.,* 365 Md. 687, 705–06, 782 A.2d 332, 343 (2001)(internal quotation marks omitted)(stating that visitation may be restricted or even denied when the child's health or welfare is threatened). In furtherance of this interest, we have "recog-

nized that in cases where abuse or neglect is evidenced, particularly in a CINA case, the court's role is necessarily more pro-active." *Id.* The juvenile court, "acting under the State's *parens patriae* authority, is in the unique position to marshal the applicable facts, assess the situation, and determine the correct means of fulfilling a child's best interests." *Id.* at 707, 782 A.2d at 343–44.

The CINA Subtitle places on local departments the initial responsibility of deciding whether to file a CINA petition upon receipt of a complaint. But this responsibility does not carry with it a concomitant absolute right to withdraw its petition prior to an adjudicatory hearing when the child, through counsel, objects to its dismissal. Ultimately, it is the court's duty when a petition has been filed to determine the truth of abuse or neglect allegations and whether the child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's needs. The CINA Subtitle provides a child with party status and a right to the assistance of counsel at every stage of any proceeding. *See* CJP §§ 3–801(u) and 3–813. These provisions manifest recognition by the Legislature that a child clearly has a stake in the outcome of a case in which abuse or neglect has been alleged and has interests that may be distinct from those advanced by other parties, such as a local department or the child's parents. *Cf. In re Adoption No. T97036005*, 358 Md. at 3, 19–20, 746 A.2d at 380, 389 (recognizing that these rights entitle a child to a hearing on the termination of the child's parents' rights, even when DSS and the parents have consented).

There are, undoubtedly, circumstances in which, presumptively, a child's best interests will not be served by an adjudicatory hearing, such as when all of the parties, including the child, through counsel or a guardian *ad litem,* favor a petition's withdrawal. Under those circumstances, the rights of a child to a hearing can be competently waived. In a case like this, however, in which the child timely requests a hearing on the merits of the petition, the purpose of CJP Section 3–817(a) is not served by a pre-hearing dismissal, even though DSS

indicates that the allegations in a petition have been resolved. It is incumbent upon the court to hear and consider the reasons why the child objects to the dismissal.

Courts in other jurisdictions have confronted a state or DSS request to dismiss a petition and have, for similar reasons, held that a child is entitled to a hearing on the petition when the child objects to its dismissal. In an Illinois case, *In re J.J.*, the assistant State's Attorney moved to dismiss petitions for adjudication of wardship for three children, over the children's appointed guardian *ad litem's* objection. 142 Ill.2d 1, 153 Ill.Dec. 239, 566 N.E.2d 1345 (1991). The Supreme Court of Illinois held that "when the State moves to dismiss a petition alleging abuse of a minor, the circuit court shall consider the merits of the motion and determine, on the record, whether dismissal is in the best interests of the minor, the minor's family, and the community." *Id.* at 239, 566 N.E.2d at 1349.

The Illinois high court rejected a separation of powers argument that the circuit court was without legal authority to require the State to proceed with the prosecution of the case due to the State's duty, power, and executive discretion in prosecuting wardship petitions. It reasoned that the "overriding purpose" of the Illinois Juvenile Court Act is "to ensure that the best interests of the minor, the minor's family, and the community are served" and that the circuit court has "not only the authority but the duty to determine whether the best interests of the minor will be served by dismissing a petition alleging abuse of a minor." *Id.* The circuit court was required to consider the merits of the dismissal motion on the record, because "[o]nly in this way will [it] be able to fulfill its duty to ensure the [minor's best interests] and 'gather information bearing upon the current condition and future welfare of persons subject to [the Juvenile Court] Act.'" *Id.* (citation omitted).

The *In re J.J.* court also rejected a suggestion that "the interests of a minor are better served by the refiling of a petition after dismissal 'and subsequent prosecution by a

zealous State's advocate.'" *Id.* (citation omitted). The court disagreed that this remedy would adequately protect a minor's right of access to the protective services of the juvenile court:

> If the court is without authority to inquire into the factual or legal bases for the dismissal of the petition, and if the facts are such that they would warrant a denial of the motion to dismiss, the court would be required to act against the best interests of the minor if the court were to allow dismissal of the petition. The minor's right of access to the juvenile court would depend upon the refiling of a petition alleging the same facts which would warrant the denial of the motion to dismiss in the first instance. This places the minor in a precarious position: his or her right of access to the juvenile court would depend upon the refiling of the petition, an event which may or may not occur. It would also depend upon the fortuitous event of the case's being assigned to a State's advocate other than the advocate who had already reached the erroneous conclusion that the interests of the minor would best be served by dismissing the petition.

*Id.* at 239, 566 N.E.2d at 1350.

In *Allen M. v. Superior Court*, 6 Cal.App.4th 1069, 8 Cal.Rptr.2d 259, 260 (1992), a California appellate court considered "whether [DSS] has an absolute right to dismiss a dependency petition over the objection of the minor." It concluded "that in such circumstances, the juvenile court must determine whether dismissal is in the interests of justice and the welfare of the minor." *Id.* DSS moved to dismiss the petition concerning two children because it concluded that there was insufficient evidence of abuse to sustain the petition. The California court reasoned that a rule conferring on the social worker or probation officer sole discretion whether to file a petition "does not confer equal discretion to dismiss a petition. Once [DSS] files a petition, it has exercised that discretion. It cannot invoke and then divest the court of jurisdiction." *Id.* at 261.

The *Allen M.* court acknowledged that there are "situations which will arise wherein it will be discovered that a petition has been filed in error." *Id.* An overview of pertinent statutory authority led it to conclude, however, that "it is the court which must make that determination." *Id.* at 261–62. The court explained that when DSS wishes to dismiss a petition, "resolution of the matter is properly by an order to show cause hearing requiring [DSS] to establish why the petition should be dismissed. The evidence may be presented by declaration and, if necessary, by testimony." *Id.* at 262.

The parent against whom abuse was alleged argued that a statutory provision permitting the child's counsel to initiate another petition favored DSS's right to unilaterally dismiss a petition. The court rejected this, however, reasoning that this "application procedure ... with subsequent judicial review upon [DSS's] refusal to file a petition, would be circuitous and waste of resources ... where [DSS] has already made clear it will not pursue the ... petition." *Id.* at 263.

In *People in Interest of R.E.*, 729 P.2d 1032, 1034 (Colo.Ct. App.1986), a Colorado appellate court held that when the state has made allegations in a dependency and neglect petition, "the child, through the guardian ad litem, is entitled to a determination of the merits, and the petition may not be dismissed over the objection of the guardian ad litem."

Najasha's parents offer an argument similar to ones rejected by the Illinois and California courts in the cases discussed above. They contend, "[a]ssuming *arguendo* that the court improperly dismissed the CINA petition, it was harmless error" because Najasha "had another mechanism for having an adjudicatory hearing." The other mechanism they reference is CJP Section 3–809, whereby a complainant may file a petition if DSS declines to do so. Najasha's parents assert that "[i]f [Najasha] wished to have the court intervene, she had the option of complaining to [DSS] regarding school attendance ..., seeking a review if [DSS] declined to file a CINA petition, and then filing her own CINA petition if the review did not produce her desired results."

We are not persuaded by this argument. Were we to apply the Section 3–809 complaint, review, and petition filing procedure in the manner advocated by Najasha's parents, this would unnecessarily delay Najasha's access to the juvenile court. Should DSS and the reviewing Secretary of Human Resources conclude that a petition is still not warranted after application of the 3–809 procedure, weeks, months or more could elapse before Najasha would have an adjudication of her neglect or abuse allegations. Such a delay is inconsistent with the CINA Subtitle's purpose of expeditiously ensuring a placement and/or the provision of services to remedy the circumstances requiring the court's intervention. *See* CJP § 3–803.

Appellees' additional arguments for DSS's right to dismiss a petition without an adjudicatory hearing are no more persuasive. DSS contends that it has a common law right, as the moving party, to dismiss its own petition. *See Ex parte Skinner & Eddy Corp.*, 265 U.S. 86, 92–93, 44 S.Ct. 446, 447, 68 L.Ed. 912 (1924)(stating that "[a]t common law a plaintiff has an absolute right to discontinue or dismiss his suit at any stage of the proceedings prior to verdict or judgment, and this right has been declared to be substantial"). DSS's rights and responsibilities as a party in a CINA case are not, however, embodied in the common law, but governed by the CINA Subtitle and Title 11 of the Maryland Rules, which applies to juvenile causes. Moreover, Maryland Rule 1–101(b) states that Title 2, which contains the rule allowing voluntary dismissal, "applies to civil matters in the circuit courts, except for Juvenile Causes under Title 11 of these Rules[.]" Rather, as Maryland Rule 1–101(k) says, "Title 11 applies to juvenile causes under Code, Courts Article, Title 3, Subtitles 8 and 8A." Nothing in Title 11 of the rules suggests that DSS, as the petitioner in a CINA proceeding, has a unilateral right to dismiss a CINA action after the petition has been filed. Maryland Rule 11–114 reflects, moreover, the language in CJP Section 3–817(a) in stating that "[a]fter a ... petition has been filed ... the court shall hold an adjudicatory hearing."

Unlike a typical civil plaintiff, DSS is not seeking relief for itself in filing suit, but is initiating an action in the juvenile

court with the purpose of advancing the child's welfare. Under CJP Section 3-809(a), DSS must file a petition "if it concludes that the court has jurisdiction over the matter and that the filing . . . is in the best interests of the child." DSS's party status is conferred by CJP Section 3-801(u), which states that DSS as "petitioner" is a party to a proceeding under the CINA Subtitle. The content of a CINA petition is also prescribed by statute. *See* CJP § 3-811(a)(providing that a CINA petition "shall allege that a child is in need of assistance and shall set forth in clear and simple language the facts supporting that allegation").

■■ These statutory and rule provisions present clear constraints on DSS's autonomy to act in CINA proceedings. As we observed in *In re Justin D.,* 357 Md. 431, 449, 745 A.2d 408, 418 (2000), DSS has its own statutory mission, but in many respects, acts as the court's agent in attempting to remedy the problems that prompt CINA proceedings. The court has a "clear and continuous supervisory role to play[,]" *id.,* and this role is invoked when abuse or neglect is alleged in a petition. Thus, DSS does not have a unilateral right to withdraw a petition prior to an adjudication when the child objects. The child is entitled to an adjudication in such a circumstance to ensure that the child is receiving proper care and attention.

Najasha's parents maintain that DSS is prohibited from maintaining a CINA petition where there is no factual basis to support it under Maryland Rule of Professional Conduct ("MRPC") 3.1.[2] They argue that nearly three months after Najasha was found to be without supervision during a drug raid at her house, DSS had grounds to believe that "the issues that brought this matter to the attention of the Court have

---

2. Maryland Rule of Professional Conduct 3.1. states:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

been resolved and no further Court intervention is necessary at this time." Applying MRPC Rule 3.1, Najasha's parents assert that "it would have been impossible for [DSS] to continue to make a good faith argument that Najasha was a CINA" and that it was required to withdraw its petition, given the change in circumstances. According to Najasha's parents, "it would make little sense to compel [DSS] to prosecute the matter" since it "would have no evidence or arguments to present to the court."

We are not persuaded by these contentions. MRPC Rule 3.1 does not preclude DSS's maintenance of a CINA petition through the adjudicatory hearing stage of a case, despite changed circumstances that throw doubt on the facts that supported the original petition. In the face of such change, DSS is still well within the bounds of professional responsibility in maintaining its petition when the child seeks an adjudication under CJP Section 3–817. At the hearing, DSS may, of course, argue that court intervention is no longer in the child's best interests, thereby complying with its MRPC Rule 3.1 responsibility to only maintain an action with substantial justification. In this instance, Najasha may also introduce facts relating to her parents' failure to ensure her regular attendance at school, because this directive was included in the April 28, 2008 order. But in bringing a CINA case to the adjudication stage, DSS complies with its statutory mandate to ensure the child's best interests by allowing the child to bring facts to light that may support the petition.

DSS offers one more basis to justify the court's decision to grant DSS's request, a procedural one. It asserts that its CINA petition made no factual allegations regarding Najasha's school attendance and that Najasha's counsel "has not asserted that *any* of the factual allegations in the CINA petition are true." The purpose of the adjudicatory hearing is "to determine whether the allegations in the petition ... are true." CJP § 3–801(c). DSS maintains, therefore, that the court was entitled to deny Najasha's hearing request, because the adjudicatory hearing must be "used as a forum to determine facts related to the allegations in the petition, and not as

a forum for exploring other matters." [3] According to DSS, if we were to allow parties to insist on a hearing for any reason or no reason, without requiring that they address the factual allegations in the petition, we would be allowing "the adjudicatory process to be used for a purpose outside the scope of what the legislature intended."

We do not share DSS's view of Najasha's arguments. In her May 14, 2008 "Notice of Exception and Request for Hearing" *de novo* ("Exception Notice"), Najasha took "exception to the Master's recommendation that the petition be dismissed" and made plain her position that "an adjudicatory hearing should be held on the petition in this case[.]" Although the Exception Notice referenced the argument Najasha's counsel made to the master concerning Najasha's infrequent and tardy school attendance, it did not merely take exception to the master's dismissal on this ground, as DSS contends. Najasha's Exception Notice took issue with the master's dismissal recommendation generally.

Indeed, at the exceptions hearing, Najasha's counsel stated her objection as follows:

> The Master's recommendation was to dismiss the case. I'm taking exception to the recommendation to dismiss the case. For one . . . thing, the statute requires that an adjudication be held in the case once the Petition has been filed. Section 3–817 . . . states that an adjudication of facts shall be held after a Petition is filed[,] not that an adjudication can be held if DSS wishes to proceed[.]

The juvenile court responded by observing that CJP Section 3–809 permits a complainant to file a petition when DSS

---

**3.** Najasha's parents also take issue with Najasha's assertion that there remained a contested issue regarding Najasha's school attendance. Like DSS does, they note that DSS did not allege in the CINA petition that school attendance was an issue. They add, moreover, that "at the exception hearing *de novo*, [Najasha] did not present evidence or argument to contradict [DSS's] proffer that 'there were no outstanding issues . . that [DSS] felt caused the matter to continue to need the attention of the court."

declines to do so, but that in this case neither Najasha, nor her counsel, were complainants. The court then reasoned:

> [I]t seems to me that the legislature did address situations in which it was a party ... or a person other than DSS who could file ... a Petition and pursue it. But in all other instances, ... isn't this just like any other case that if the Plaintiff says we are dismissing the case, the case is dismissed because the Movant isn't in the case anymore. Tell me why that is not the case.

Najasha's counsel responded:

> [T]he language is that an adjudication shall be held after the Petition is filed if DSS dismisses the Petition then the adjudication has been filed. Once they file it, the child then becomes a party to the case and has a right to proceed and if the Petition is dismissed before the adjudication then the child has no right to proceed. And in [CINA] hearings ... once a case opens, the Court then has an obligation to ensure that the children are properly taken care of and ... under the statute it shouldn't be completely up to DSS whether to proceed under a case or not.

The court replied that it was "not persuaded" and stated that CJP Section 3–817(a) only required it to hold an adjudicatory hearing on a petition "if DSS is continuing to pursue it." It added that "it is [DSS] which is the moving party and I think that if they wish to withdraw the Petition or ask the Court to dismiss it based upon their motion, I think they have that right." The court concluded that Najasha could file a separate complaint and then file a petition under the CINA "statutory scheme[,]" but because Najasha was not the complainant in this case, it would deny her exception and dismiss the case. Thus, it is evident that the juvenile court did not rule based on the limited objection regarding school attendance. Rather, it understood the issue to be whether DSS had a unilateral right to dismiss a petition, and concluded that it did.

## Conclusion

In conclusion, the juvenile court erred in dismissing the case based on its view that DSS had a unilateral right to withdraw its petition, over the objection of the child. The court should have declined DSS's dismissal request and conducted an adjudicatory hearing on the petition's merits, in light of Najasha's objection to dismissal and hearing request.[4] We therefore vacate the dismissal and remand the case for further proceedings on the petition.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED; CASE REMANDED TO THAT COURT FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE BALTIMORE CITY DEPARTMENT OF SOCIAL SERVICES.**

---

4. Contrary to DSS's assertion, the juvenile court was not precluded from considering Najasha's alleged infrequent and tardy school attendance at the adjudicatory hearing simply because this issue was not alleged in DSS's CINA petition. Under Maryland Rule 11–109(a), a petition "may be amended by or with the approval of the court at any time prior to the conclusion of the adjudicatory hearing."