*In re E.R., T.R., J.R., & D.B.*, No. 2463, September Term, 2017

Filed:  November 8, 2018: Opinion by Friedman, J.

**Infants > Child in Need of Assistance > Sufficiency of Petition**

A CINA petition must allege specific facts to show that both custodial and noncustodial parents are unable or unwilling to care for the child.

**Infants > Child in Need of Assistance > Sufficiency of Petition**

A CINA petition is sufficient with regard to a noncustodial parent if it alleges that the noncustodial parent acquiesced in the custodial parent's conduct by allowing the child to remain in the dangerous environment.

Circuit Court for Garrett County
Case Nos. 11I174577; 4578; 4759; 4580

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2463

September Term, 2017
_____


IN RE: E.R., T.R., J.R., AND D.B.

_____

Friedman,
Fader,
Eyler, James, R.
   (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Friedman, J.
_____

Filed:  November 8, 2018

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document " authentic.



Suzanne C. Johnson, Acting Clerk

This case requires us to decide what a local department of social services must plead in a CINA[1] petition when it believes that a child's custodial parent is unable to care for the child, but lacks sufficient information regarding the capability of the noncustodial parent. In this case, the Garrett County Department of Social Services ("GCDSS") filed bare bones petitions alleging both parents to be unable to care for each child even though it only had factual support for the allegations against mother, the children's custodial parent. From those petitions, the juvenile court held a hearing at which it found mother unable to care for the children, but found the children's respective fathers, the noncustodial parents, able and willing to assume custody. The court awarded custody to the fathers, and dismissed the CINA cases. Mother now challenges that award. The simple answer to mother's challenge is that the remedy she seeks—the return of the custody of her children—is not available in this appeal, given that she was found to be unable to care for them. The more complete answer is that the trial court did not err in accepting the bare bones petitions.

## BACKGROUND

Appellant, T.P., is the mother of four children: J.R., E.R., and T.R. by one father, and D.B. by another. Mother is no longer involved in a relationship with either father and, at the time of the events leading to this appeal, she had primary physical custody of all four children. After GCDSS received notice of an incident involving mother and the children,

---

[1] A CINA is a "child in need of assistance." Md. Code, Courts and Judicial Proceedings ("CJ"), §3-801(g). Maryland defines a CINA as a "child who requires court intervention because: (1) the child has been abused, has been neglected, has a developmental disability, or has a mental disorder; and (2) the child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's needs." CJ § 3-801(f).

it filed four identical petitions alleging that each of the children was a CINA. The petitions began with a formulaic recitation that: "[t]he State of Maryland alleges that the above-named … child is a child in need of assistance because the child has been: abused; neglected; and the child's parents … [are] unable or unwilling to give proper care and attention to the child and the child's needs." The petitions then included eleven paragraphs detailing the facts of an incident involving mother and her then-boyfriend (now husband)[2] and of GCDSS's efforts to work with mother. The petitions did not contain any allegations regarding the children's fathers other than their respective names and addresses and the bare bones allegation that they were "unable or unwilling to give proper care and attention" to the children. It is conceded by all parties to this appeal that at the time it prepared the petitions, GCDSS had no information about whether these noncustodial fathers were, in fact, unable or unwilling to care for their respective children.

After a shelter care hearing, a family law magistrate placed the children with their respective fathers until the adjudication and disposition stages of the proceedings. In so doing, the magistrate noted that there were "no allegations against the dads in either petition" and that mother consented to the placements. At the adjudicatory hearing, the magistrate sustained almost all the allegations made against the mother in the CINA petitions. The disposition hearing immediately followed, after which the magistrate made the following conclusions with respect to each child:

---

[2] We have omitted the details of this incident as they are not relevant to our consideration of the case.

> As there were no allegations sustained (or even made in the Petition) against the Father, the Magistrate cannot conclude that this child is a Child in Need of Assistance. Courts & Judicial Proceedings § 3-819(e). In re Russell G., 108 Md. App. 366 … (1996).[3]

Accordingly, the family law magistrate recommended that the juvenile court exercise its discretion to grant primary physical custody of the children to their respective fathers with joint legal custody between mother and each father. After concluding that it could not "be assured [that mother] is able to act in the best interests of her children on a daily basis," the juvenile court ratified the magistrate's recommendations. Mother noted these timely appeals, in which she principally challenges the juvenile court's authority to award custody to the children's fathers at the CINA disposition.

## ANALYSIS

### I.

Mother's first contention is that the juvenile court erred in its determination that she is unable or unwilling to care for her children. This is a factual determination that an appellate court reviews for clear error. *In re Ashley S.*, 431 Md. 678, 704 (2013). Because our review reveals that this finding was amply supported in the record, it was not clear error and therefore must be affirmed.

---

[3] As will be explained below, both the statutory and caselaw citations in the magistrate's ruling refer to the prohibition on finding a child to be CINA if the child has at least one parent who is willing and able to provide care.

II.

Mother's remaining appellate issues concern the petitions prepared by GDCSS and the proper pleading standards to be applied to the local department's allegations that a child is a CINA. Most particularly, mother argues that a local department must present a detailed factual predicate in the initial pleading to substantiate its claim that the noncustodial parent is unable and unwilling to care for the child. It is critical to understand that mother's complaint is not that the local department failed to plead sufficiently with respect to the children's *custodial* parent (her) but rather that it failed to plead sufficiently with respect to the children's *noncustodial* parents (the fathers). She alleges that because GCDSS failed to include facts in the CINA petitions to support the allegations that the fathers were unable or unwilling to care for the children, the children were not "in need of assistance," and the trial court did not have jurisdiction to award custody to the fathers under CJ § 3-819(e).

To understand mother's issues, we must first understand the interaction between the general pleading requirements of the Maryland Rules and the specific pleading requirements for CINA petitions established by statute. We begin with CJ § 3-809(a), which provides that:

> On receipt of a complaint from a person or agency having knowledge of facts which may cause a child to be subject to the jurisdiction of the court …, the local department shall file a petition … if it concludes that the court has jurisdiction over the matter and that the filing of a petition is in the best interests of the child.

The Maryland Rules govern the form of pleadings in CINA cases unless the statute makes a specific exception. CJ § 3-810(a). Under Rule 2-305, the general rule governing

4

pleadings, a local department's petition must "contain a clear statement of the facts necessary to constitute a cause of action." Md. R. 2-305; *see also* Md. R. 2-303(b) ("A pleading shall contain … such statements of fact as may be necessary to show the pleader's entitlement to relief."). Rather than make an exception, the specific CINA pleading statute is consistent with this requirement. CJ § 3-811(a) states that "[a] CINA petition … shall allege that a child is in need of assistance and shall set forth in clear and simple language the facts supporting that allegation." The statute explicitly requires the local department to plead facts showing that: "The child has been abused, has been neglected, has a developmental disability, or has a mental disorder; and (2) The child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's needs." CJ § 3-801(f). Finally, although it is not discussed anywhere else in the statute (particularly with respect to pleading requirements), the governing law precludes a court from finding a child to be a CINA if "there is another parent available who is able and willing to care for the child." CJ §3-819(e).[4] This prohibition, both in the statute and

---

[4] The legislature enacted CJ § 3-819(e) in response to this Court's decision in *In re Russell G.*, which held that a child cannot be a CINA if it "has at least one parent willing and able to provide the child with proper care and attention." 108 Md. App. 366, 377 (1996); S. JUDICIAL PROCEEDINGS, FLOOR REPORT S.B. 660 (2001). At the time *Russell G.* was decided, no statutory provision existed granting a court the express authorization to modify custody if a child could not be declared a CINA because the allegations could only be sustained against one parent. The Maryland Judicial Conference recommended that the legislature enact CJ § 3-819(e) to fill this void, explaining that:

> This provision **allows the court to award custody to a non offending, non custodial parent even when there has not been a CINA finding**. This new provision prevents the situation that occurred in the *Russell G.* case where the custodial parent abused or neglected the child, but the court

5

in the caselaw that preceded it, reflects Maryland's strong preference that children be placed with a parent rather than in shelter care. *In re Yve S.*, 373 Md. 551, 574-75 (2003) (discussing Maryland's "statutory hierarchy" of placement options, prioritizing placement with the natural parents followed by placement with a relative, with placement in foster care as a last resort). Thus, to file a CINA petition, in addition to pleading facts showing that the custodial parent is unable to care for the child, the local department must also plead facts showing that the noncustodial parent is unwilling or unable to assume custody.

The problem arises with respect to noncustodial parents. Sometimes the noncustodial parent is well-known to the local department. When that is the case, it is comparatively easy for the local department to determine either that the noncustodial parent is willing and able to care for the child and it is not necessary to file a petition pursuant to CJ §3-809(b), or alternatively, to file a petition pleading the facts necessary to demonstrate that the noncustodial parent is also unable and unwilling to care for the child. It is more difficult, however, if the local department does not know who the noncustodial parent is or whether that person is willing and able to take on custody.

---

> could not make a CINA finding and transfer custody because the non custodial parent was physically willing and able to care for the child, but for the legal custody of the offending parent.

MARYLAND JUDICIAL CONFERENCE, THE FOSTER CARE COURT IMPROVEMENT PROJECT (FCCIP) IMPLEMENTATION COMMITTEE, *Summary of Senate Bill 660 and House Bill 754* (Feb. 14, 2001) (emphasis added). The legislature accepted that recommendation. 2001 Md. Laws ch. 415 (S.B. 660).

In such a circumstance, mother would have us instruct the local department to wait, telling it that it may not file a CINA petition on behalf of the child until it can plead the necessary factual predicate to support its claim that the noncustodial parent is unable and unwilling to care for the child. GCDPSS argues to the contrary, that it ought to be allowed to file the CINA petition even if it lacks the factual predicate about the noncustodial parent.

It is our view that the best practice is somewhere between the extreme positions offered. On the one hand, we cannot agree with mother that a local department can do nothing to immediately protect the child and must undertake an investigation of the noncustodial parent before it may act. To us, this seems a dangerous policy. The first priority—if the local department thinks the circumstances warrant it—is to remove a child from a dangerous situation with the custodial parent. In such a circumstance, waiting is, itself, potentially dangerous. Neither, however, are we willing to give local departments free reign to make unsubstantiated claims against noncustodial parents. A local department must plead *some* facts to support its claim that the noncustodial parent is unable or unwilling to assume custody. Moreover, whatever the local department pleads in a CINA petition must be signed by its attorney, which is, by our rules, certification that "the attorney has read the pleading or paper; that to the best of the attorney's knowledge, information, and belief there is good ground to support it; and that it is not interposed for improper purpose or delay." Md. R. 1-311(b). No Maryland attorney can sign a CINA petition asserting that the noncustodial parent is unwilling or unable to care for that parent's child if the attorney knows or believes the opposite to be true.

7

We are persuaded that the best course is suggested by this Court's opinion in *In re Russell G.*, 108 Md. App. 366 (1996). There, the sole factual predicate to support the local department's claim that the noncustodial parent was unwilling or unable to assume custody was the fact that the noncustodial parent "acquiesced" in the custodial parent's conduct. *Id.* at 377-78. This Court held that this factual predicate was sufficient to satisfy CJ § 3-811(a). *Id.* We cannot imagine a situation in which a local department will be unable to plead, directly or by implication, that a noncustodial parent has "acquiesced" in leaving the child with the unfit custodial parent.[5]

Here, GCDSS did not make even this minimal pleading. Nevertheless, we are unwilling to afford mother relief for this deficiency. First of all, we do not see (and at oral argument mother's counsel was unable to supply) a reason why a custodial parent who is unable to care for the children should receive a benefit from the local department's inability to plead necessary facts about the noncustodial parent. We cannot fathom how returning the children to an unsafe situation with mother provides an appropriate remedy for the local department's deficient pleading with respect to the fathers. But more importantly, a juvenile court need not dismiss a defective or incomplete CINA petition. *In re Najasha B.*, 409 Md. 20, 40 (2009) (A local department is not prohibited from maintaining a CINA petition "through the adjudicatory hearing stage of a case, despite changed circumstances

---

[5] Of course, the local department must continue to investigate and may, if appropriate amend its petition to provide additional facts as they develop. *See Najasha B.*, 409 Md. at 40; Md. Rule 11-108(a) (stating that, with permission of the court, a juvenile petition may be amended "at any time prior to the conclusion of the adjudicatory hearing").

that throw doubt on the facts that supported the original petition."). Thus, the trial court did not err in proceeding upon the petitions filed by GCDSS.

III.

Mother's second attack on GCDSS's bare bones CINA petitions is that they allowed GCDSS to accomplish a change in custody without the procedural safeguards that normally apply in custody modification cases. Mother correctly observes that, ordinarily, a noncustodial parent must demonstrate a material change of circumstances before a court can consider whether a change in custody is in the best interests of the child. Md. Code, Family Law ("FL") Article, § 8-103; *Wagner v. Wagner*, 109 Md. App. 1, 29 (1996) (a circuit court's inquiry must cease unless it finds that a material change in circumstances exists).[6] She therefore contends that if GCDSS's bare bones CINA petitions are allowed to stand here, local departments will be able to manufacture situations where CJ § 3-819(e) will apply so as to "to strip [a custodial parent] of her custody and award it to the other parent" without having to satisfy the strict test that typically governs custody modification proceedings.

---

[6] Mother's argument attributes these procedural safeguards to a parent's constitutional right to the care and custody of the parent's children. Ordinarily, however, those constitutional concerns don't arise from the transfer of custody between a child's parents but rather to a non-parental third party. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000) (holding that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."); *McDermott v. Daugherty*, 385 Md. 320, 353 (2005) (holding that parents have a fundamental, constitutionally-protected right to the care, custody, and control of their children).

But mother's argument misses the mark. The kinds of traumatic events that must be proven to demonstrate that a parent is unfit and the child is a CINA, such as abuse and neglect, are, by definition, material changes of circumstance. Thus, we doubt that this is an easier standard to prove.

Further, it is clear that the legislature intended to provide juvenile courts with the discretion to transfer custody from an unfit or abusive custodial parent to an appropriate, willing, and able noncustodial parent in a CINA proceeding:

> If the allegations in the petition are sustained against only one parent of a child, and there is another parent available who is able and willing to care for the child, the court may not find that the child is a child in need of assistance, but, before dismissing the case, *the court may award custody to the other parent.*

CJ § 3-819(e) (emphasis added). Thus, the legislature specifically envisioned a change in custody of the type that occurred in this case, where the allegations were sustained against only one parent—mother—and another willing and able parent—the fathers—existed to provide proper care for the children. We see no constitutional obstacle to such a policy.

We therefore hold that the juvenile court did not err by accepting the GCDSS's bare bones CINA petitions and granting custody to the children's respective fathers when the allegations in the petitions were sustained only against mother.

**JUDGMENT OF THE CIRCUIT COURT FOR GARRETT COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**